## OPPENHEIM, OBERNDORF & CO., Inc., v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1925.)

No. 2274.

Monopolies ⟨⟩17(2)—System of merchandizing calculated to maintain resale price held to justify action by Federal Trade Commission in ordering its discontinuance.

System of merchandizing employed by manufacturer of underwear under which jobbers, wholesalers, and mail order houses not maintaining resale prices fixed by it are reported by its salesmen and placed on list of price cutters to which goods will not be sold until they give assurance that they will not cut prices, *held* to authorize Federal Trade Commission to order discontinuance of practice of reporting names of dealers not observing resale prices and placing their names on list of undesirable purchasers, employing salesmen or agents to report dealers not observing such resale prices, or utilizing any other equivalent co-operative means to maintain prices fixed by it.

On Petition for Review of Order of the Federal Trade Commission.

The Oppenheim, Oberndorf & Company, Inc., doing business under the trade-name and style Sealpax Company, was by order of the Federal Trade Commission commanded to cease and desist from certain unfair practices and methods of sale, and it petitions for review. Order affirmed.

W. Calvin Chesnut and Charles Markell, both of Baltimore, Md. (S. Ralph Warnken and Haman, Cook, Chesnut & Markell, all of Baltimore, Md., on the brief), for petitioner.

Adrien F. Busick, Asst. Counsel for Federal Trade Commission, of Washington, D. C. (W. H. Fuller, Chief Counsel Federal Trade Commission, of Washington, D. C., and T. H. Baker, Jr., on the brief), for respondent.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The Federal Trade Commission, after a full hearing, found unfair the methods of interstate business of Oppenheim, Oberndorf & Co., and on the 19th of April, 1924, ordered that:

"Oppenheim, Oberndorf & Co., Inc., doing business under the trade-name and style of Sealpax Company, its officers, agents, servants and employees, do cease and desist from directly or indirectly carrying into effect by co-operative methods a system of resale prices in which respondent, its customers and agents, undertake to prevent others from obtaining the Sealpax products of respondent at less than the prices designated by it by:

"(1) The practice of reporting the names of jobbers and wholesalers who do not observe such resale prices.

"(2) Causing jobbers and wholesalers to be enrolled upon lists of undesirable purchasers who are not to be supplied with the Sealpax products of the company unless and until they have given satisfactory assurance of their purpose to maintain such designated prices in the future.

"(3) By employing its salesmen or agents to assist in any plan of reporting jobbers and wholesalers who do not observe such resale prices for said products.

"(4) By utilizing any other equivalent co-operative means of accomplishing the main-

tenance of prices fixed by respondent for said products."

The following facts found by the Commission were clearly established by the evidence:

Oppenheim, Oberndorf & Co. are manufacturers of underwear. One of its products is called "Sealpax," which is sold exclusively to jobbers, wholesalers, and mail order houses. This branch of its business is conducted under the name of the Sealpax Company, Inc. It notifies its customers of the price at which Sealpax underwear shall be sold and undertakes, in the main successfully, to prevent sales at a less price. To accomplish this purpose, it uses these methods:

It selects its customers for their credit standing and their willingness to maintain the price fixed. It refuses to sell to dealers who persist in cutting the price. Through its salesmen it endeavors to discover customers who do not maintain the required price so as to cut them off or get them to restore the price. By correspondence, circulars, and through agents, it exhorts and persuades its purchasers not to sell at a less price; and in the same way gives notice that it will not sell to dealers who do not maintain the price. It endeavors by letters and through agents to induce customers who have been excluded for price cutting to give pledges and assurances that they will in future maintain the price as a condition to reinstatement, and it reinstates customers who give the assurance. By correspondence and through agents it has sought with considerable success the co-operation of its customers in maintaining prices. It has offered guaranty of prices and allowed goods to be returned as an inducement for the maintenance of the fixed price. It keeps a list of jobbers and wholesalers called "D S," meaning "Don't Sell," on which is placed the names of customers who have not maintained the price and are therefore not to be solicited or allowed to purchase until they give assurance that they will not in future cut the price.

We see no escape from holding that the Commission was required to respond to these facts by making the order above recited. The facts are substantially the same as in Federal Trade Commission v. Beech-Nut Packing Co., 257 U. S. 441, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882, except in two particulars. In the case cited the effort to control prices extended to retailers while in this case it did not. This difference, of course, cannot affect the principle. In the Beech-Nut Case the packages were so marked under a key number system as to enable the Beech-Nut Company's agents to trace to the seller goods sold at less than the fixed price. That, however, was only one of the means of throttling competition, and its absence here does not affect the illegality of the other means to that end condemned by the Supreme Court. As this means was not used in the present case, it was, of course, not enjoined by the Commission. As to those illegal means condemned by the Supreme Court which were used to suppress competition, the Commission rightly adopted the precise language of the Supreme Court in making its order.

Counsel for petitioner contend the language of the order is too indefinite for its guidance. The Supreme Court thought otherwise, doubtless having in mind the impossibility of anticipating and mentioning every illegal variation of device for preventing competition.

The case has been elaborately argued, with the citation of many authorities. It seems to us, however, to be absolutely controlled by the Beech-Nut Case, and the order of the Commission must be approved and affirmed.

Affirmed.