# HILLS BROS. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Ninth Circuit. January 4, 1926.)

No. 4493.

**1. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Federal Trade Commission held not required to make specific finding that proceeding was in public interest.**

Where complaint by Federal Trade Commission charging unfair competition, recited that commission was acting in public interest, under Act September 26, 1914, § 5 (Comp. St. § 8836e), finding that method of competition employed was prohibited by act included question of public interest, and no specific finding thereon was necessary.

**2. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Ordinarily admission of incompetent testimony by Federal Trade Commission cannot be assigned as error.**

Ordinarily admission of incompetent testimony by Federal Trade Commission in proceedings to prevent unfair competition under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), cannot be assigned as error; court being concerned only with question whether there is any competent testimony to support commission's finding.

**3. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Federal Trade Commission has no jurisdiction of commerce wholly within state.**

Federal Trade Commission has no jurisdiction of commerce wholly within state in proceedings to compel discontinuance of unfair competition under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), because of limitations of powers of Congress, and not because of decisions of state courts.

**4. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Federal Trade Commission has jurisdiction of interstate commerce, not limited by decisions of state court.**

Federal Trade Commission, in proceedings to compel discontinuance of unfair competition under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), has jurisdiction of interstate commerce, not limited by decisions of state court.

**5. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Where evidence showed uniform plan of maintaining resale prices, evidence of sales within state held admissible.**

Where evidence showed that coffee importer had uniform plan of maintaining prices by refusing to sell to retailers who cut prices, testimony as to intrastate sales was admissible to show course of business in interstate commerce.

9 F.(2d)—31

**6. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Evidence of individual transactions held admissible to prove marketing plan or policy.**

In proceeding by Federal Trade Commission under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), to compel discontinuance of unfair methods of competition, evidence of individual transactions was admissible to prove merchandising plan or policy.

**7. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Evidence of methods employed by others held properly excluded in proceedings to compel discontinuance of unfair competition.**

In proceedings by Federal Trade Commission under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e), to compel discontinuance of unfair methods of competition, evidence of methods employed by others held properly excluded.

**8. Trade-marks and trade-names and unfair competition ⬥80½, New, vol. 8A Key-No. Series—Evidence held to support finding that coffee importer kept "do not sell list."**

Evidence held to support finding that coffee importer kept "do not sell list" of customers refusing to maintain minimum prices.

**9. Monopolies ⬥12(1)—What person may lawfully do individually, he may not always do lawfully by combination or co-operation with others.**

What person may lawfully do individually, he may not always do lawfully by combination or co-operation with others.

**10. Monopolies ⬥17(2)—System of merchandising to maintain resale price by retailers held to justify ordering its discontinuance by federal Trade Commission.**

System of merchandising employed by coffee importer with co-operation of customers and salesmen, whereby goods were not sold to retailers not maintaining minimum resale price fixed by it, held to authorize Federal Trade Commission to order discontinuance of such practices under Act Sept. 26, 1914, § 5 (Comp. St. § 8836e).

**11. Constitutional law ⬥70(3)—Argument as to evils of price cutting should be presented to Legislature and not to courts.**

Argument as to evils of price cutting should be presented to Legislature, and not to court in proceeding by Federal Trade Commission to compel discontinuance of merchandising methods designed to maintain prices.

Petition to Review Order of the Federal Trade Commission.

Petition by Hills Bros. a corporation, to review an order of the Federal Trade Commission, commanding it to cease and desist from certain unfair practices and methods of sale. Order affirmed.

Myrick & Deering and Scott, of San Francisco, Cal. (Frank P. Deering, of San Francisco, Cal., of counsel), for petitioner.

Adrien F. Busick, Asst. Chief Counsel, Federal Trade Commission, G. Edwin Rowland, and James W. Nichol, all of Washington, D. C., for respondent.

Before HUNT, RUDKIN, and McCAMANT, Circuit Judges.

RUDKIN, Circuit Judge. This is a proceeding to review an order of the Federal Trade Commission. The facts as found by the commission are substantially as follows:

The petitioner is a corporation organized and existing under the laws of the state of California, with its principal office or place of business at San Francisco. Its capital stock is $2,000,000. It is extensively engaged in the business of importing coffee from Brazil and other foreign countries and selling the same in the United States, after roasting, grading, blending, and packing. Generally speaking, its sales are made to retail dealers only, but in some of the Western states it sells to jobbers, on the same terms and conditions, and in some of the Eastern states exclusive territory is allotted to wholesale dealers. The petitioner has about 25,000 customers in all. About 54 per cent. of these are located in the state of California, and the remaining 46 per cent. in various other states of the Union, principally in the states of Washington, Oregon, Idaho, Utah, Colorado, Arizona, New Mexico, Nevada, Wyoming, and Missouri. It employs 61 salesmen, who visit retail grocers and other retail dealers from time to time and solicit orders for coffee. These salesmen are under the general direction of a sales manager located at the principal office in San Francisco. Branches are maintained at different places in charge of branch office supervisors. The coffee is marketed under different brands and trade-names, but the Red Can brand and the Blue Can brand are the only two with which we are concerned at this time. By advertising and otherwise the petitioner has created a demand for its products, and in the year 1923 sales of the two brands in question approximated 25,000,000 pounds. About 44 per cent. of the sales were outside of the state of California.

In November, 1920, the petitioner adopted a policy or plan of fixing a minimum price at which retail dealers should sell its coffee to the consuming public. This plan provided that the retail price should be 5 cents per pound above store cost; that is, above the list price with transportation added. Its purpose in adopting this policy was to make the price of the Red and Blue Can brands uniform in the various localities in which it is sold, and to prevent price cutting by dealers. The plan, as adopted, does not prevent retail dealers from selling for more than 5 cents per pound above store cost, but in some instances salesmen in the employ of the petitioner have questioned the wisdom or policy of selling above the minimum price. The fixing of a minimum price by the petitioner has a tendency to cause retail dealers to regard the minimum price as a maximum one, and a great majority of dealers sell at the minimum price and no other. The petitioner made this minimum retail price plan known to the retail trade by issuing a bulletin to all salesmen, and they in turn informed the retail dealers. The petitioner also caused advertisements of its plan to be published in trade journals having a wide circulation in the states in which it transacted business. It also mailed to each of its customers a copy of the advertisement appearing in these trade journals, and salesmen from time to time called the attention of retail dealers to the minimum resale plan.

When the petitioner makes any change in the price of the Red and Blue Can brands it notifies the branch offices and salesmen, and they in turn notify the retail dealers by telephone or mail. The petitioner enforces the minimum retail plan by refusing to sell to a retail dealer who sells the Red or Blue Can brands for less than the minimum resale price, and when the petitioner is informed that a retail dealer is selling below the minimum resale price, and the retail dealer refuses to restore the minimum price, further orders from the dealer will not be filled. Since adopting the minimum price plan, the petitioner has refused to sell to approximately 100 dealers in the various states for failure on their part to maintain the minimum resale price. The petitioner learns of instances where its minimum resale price is cut, through its salesmen and from competing retail dealers located near the dealer who may be cutting the price, and salesmen report instances of price cutting in their respective territories, and invite and procure from retail dealers upon whom they call reports of the failure of other competing retail dealers to maintain the minimum price, which reports are transmitted to the petitioner. Retail dealers continually advise salesmen whenever a competitor cuts the minimum price established by the petitioner, and often tele-

phone to one of the branch offices and report instances of price cutting by competitors. These reports by retail dealers are solicited and requested by the salesmen, and they assure the retail dealers that, if the offending dealer refuses to stop selling below the minimum resale price, the petitioner will refuse to make further sales to the offending party.

When a retail dealer is reported, a salesman in the employ of the petitioner calls upon such dealer and endeavors to obtain a promise from him that he will restore the minimum resale price. In such case the salesman threatens the retail dealer that, if he does not restore such resale price and promise to observe it in the future, his name will be stricken from the list of customers, and he will be unable to obtain any further supplies; but upon the promise of the retail dealer to restore and maintain the minimum resale price he is given assurance by the salesman that the petitioner will continue to fill his orders. Retail dealers often voluntarily report instances of failure to observe the minimum price by competitors to the main office direct, and upon receiving such reports the petitioner writes a letter to the dealer who is not maintaining the price, calling attention to the resale plan and requesting his approval of the plan and his co-operation in maintaining it. The petitioner also writes to the dealer making the report, thanking him for the information and inclosing a copy of the letter sent to the dealer who has failed to maintain the minimum resale price. Whenever a dealer refuses to maintain the resale price, he is refused a further supply of coffee, and his name is removed from the list of customers. This is accomplished by placing a sticker on the ledger folio, or ledger card, of the petitioner, upon which sticker the words "Do Not Sell" are written. The same stickers are also used when the name of a customer is removed from the list for other reasons than the failure to maintain the resale price. When a dealer has been refused a further supply of coffee for failure to observe the minimum resale price, and his name is removed from the list of customers, his name will not be restored to the list until he gives satisfactory assurance that he will maintain the minimum resale price in the future.

The cans containing the coffee are marked with the date of packing, in code; but the marking is not such as to enable the petitioner or any other person to identify any can as a part of any particular shipment, and no record is kept of the packages, cans, or cases, so as to enable any person to identify any particular can or package of coffee as being a part of any particular shipment. The minimum resale price policy and practice of the petitioner, as applied to its Red and Blue Can brands, has a tendency to and does constrain all dealers uniformly to sell the coffee to the public at the prices fixed by the petitioner for the respective territories in which they are located, and has a tendency to and does restrict competition between retail dealers handling these brands of coffee, and the practice tends to and does unduly hinder and obstruct competition in the sale and distribution of coffee in interstate commerce.

Upon the foregoing facts the commission issued its order to cease and desist, in conformity to the order approved by the Supreme Court in Federal Trade Commission v. Beech-Nut Co., 257 U. S. 441, 456, 42 S. Ct. 150, 66 L. Ed. 307, 19 A. L. R. 882.

By section 5 of the Act of September 26, 1914 (38 Stat. 719 [Comp. St. § 8836e]), the Federal Trade Commission is empowered and directed to prevent persons, partnerships, and corporations, except banks and common carriers subject to the Acts to Regulate Commerce, from using unfair methods of competition in commerce. It further provides that, whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve a complaint as therein provided, and if upon the hearing the commission shall be of opinion that the method of competition in question is prohibited by the act, it shall make a report in writing, in which it shall state its finding as to the facts and shall issue and cause to be served an order to cease and desist from using such method of competition.

[1] The complaint in this case recites that the commission, in filing the complaint and making the charges, was acting in the public interest, pursuant to the provision of the act of Congress; but there was no other or further finding upon that question, and because of the absence of such finding the petitioner contends that the order is erroneous and cannot be sustained.

We cannot agree with this contention. An examination of the statute shows very clearly that the question whether a proceeding by

the commission in respect thereof would be to the interest of the public, like the question whether the commission has reason to believe that any person, partnership, or corporation has been or is using any unfair method of competition in commerce, is committed to the discretion of the commission, is to be determined by the commission before proceedings are instituted, and is not thereafter a subject of controversy either before the commission or before the court, except in so far as the question of public interest is necessarily involved in the merits of the case, and, if the commission finds that the method of competition in question is prohibited by the act, no other or further finding on the question of public interest is required. People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737.

The petitioner cites John Bene & Sons v. Federal Trade Commission (C. C. A.) 299 F. 468, in support of its contention, but the decision in that case was based on the testimony, not upon the absence of a finding that the proceeding was to the interest of the public. True, the court called attention to the fact that there was no finding to the effect that the proceeding was to the interest of the public; but we do not understand that the court intended to hold that such a finding was necessary. A finding that the method of competition employed was prohibited by the act covers and includes the question of public interest, and no specific finding on that question is requisite or necessary.

[2-5] The petitioner objected to the introduction of any testimony tending to show the course of business pursued by it in the states of California and Washington, upon the ground that it is lawful to adopt and maintain a minimum resale price plan in these states, under the decisions of their Supreme Courts. Ordinarily the admission of incompetent testimony cannot be assigned as error in a proceeding of this kind, because the court is only concerned with the question whether there is any competent testimony to support the findings of the commission; but, inasmuch as the objection here interposed goes to a considerable part of the testimony admitted and considered by the commission, we deem it proper to consider it briefly. Of course, it will be conceded that the commission had no jurisdiction over commerce wholly within the state of California; but this want of jurisdiction arose from the limitations on the powers of Congress, and not from the decisions of the California courts. On the other hand, it must be conceded that

the commission had jurisdiction over commerce, interstate in its character, between the states of California and Washington, and that jurisdiction was neither limited nor controlled by the decisions of the Washington court.

But, aside from this well-recognized distinction between interstate commerce and commerce wholly within a single state, the testimony was clearly competent. The business of the petitioner, both state and interstate, was conducted on the same uniform plan or basis. In announcing that plan to its customers in the bulletin of November 5, 1920, the petitioner said: "In San Francisco, Oakland, and Seattle, where some of the most pernicious price cutting has been going on, a minimum resale price was made effective several weeks ago, and you are now to understand that it is our intention to see that a minimum resale price on the following basis is maintained in all territories."

All the testimony in the case is consistent with this announcement, and inconsistent with any other view. Indeed, when the sales manager of the petitioner was asked whether the resale price policy in the state of California differed from that in Nevada and Southern Oregon, he refused to answer the question, on the advise of counsel for the petitioner. Testimony tending to show the course of business in California had therefore a direct tendency to prove the course of business in interstate commerce.

[6] The petitioner further objected to the introduction of any testimony tending to show single instances, as opposed to a merchandising plan or policy, on the ground that a single instance is not a method, and proof of single instances is not proof of an unfair method of competition. But counsel seems to lose sight of the fact that nearly all unlawful combinations and conspiracies are proved in this way, and are rarely susceptible of proof in any other. A single instance may amount to but little; but, when single instances are multiplied, all pointing to the same end or conclusion, they afford ample, and ofttimes the most satisfactory, proof of the existence of a combination or conspiracy.

[7] The petitioner also offered to prove that a concern in Los Angeles was selling coffee, and that publishers throughout the country were selling magazines, at fixed prices in other states, under agreements to maintain these prices, and refused to sell to dealers who would not maintain the prices agreed upon. An objection to this class of testimo-

ny was sustained, and the ruling is assigned as error. If the concerns in question did nothing more than the petitioner has done, according to its own contention, they did not violate the law, nor has the petitioner violated the law, for reasons hereinafter stated. If, on the other hand, the petitioner has violated the law, it would avail nothing to prove that others were equally guilty. Proof of the methods employed by others would be of little avail in any event, unless the methods employed were similar, and in order to determine the similarity of methods the commission would be compelled to hear and try many cases, instead of only one. There was no error in the rulings complained of.

[8] The petitioner further contends that the testimony fails to show that it keeps a "Do Not Sell" list, applicable to dealers who refuse to maintain the minimum price. A bulletin issued by the petitioner under date of January 10, 1922, and addressed to salesmen, contains the following:

"Whenever the necessity occurs for a salesman to close the account of a customer for noncompliance with the Hills' minimum resale price policy, the San Francisco office and the branch office shall both be notified. "Do Not Sell" indicators will then be attached to ledger folio (or ledger cards). See form attached."

The evidence was therefore ample to show that the petitioner maintained a list such as that set forth in the findings of the commission.

[9, 10] This brings us to the principal contention of the petitioner, namely, that it has simply fixed a minimum resale price for its coffee, and has refused to sell to dealers who will not maintain the minimum price, and that in so doing it has acted within its rights and kept within the law. If the petitioner has done nothing more than this, it will readily be conceded that the charge of unfair competition has failed, for, as said by the Supreme Court in Federal Trade Commission v. Beech-Nut Co., supra, after reviewing its earlier decisions: "By these decisions it is settled that, in prosecutions under the Sherman Act, a trader is not guilty of violating its terms who simply refuses to sell to others, and he may withhold his goods from those who will not sell them at the prices which he fixes for their resale."

But the court added, significantly: "He may not, consistently with the act, go beyond the exercise of this right, and by contracts or combinations, express or implied, unduly hinder or obstruct the free and natural flow of commerce in the channels of interstate trade."

In other words, what a person may lawfully do individually he may not always do lawfully by combination, or through co-operation with others, and without unduly prolonging the opinion, we will only say that it clearly appears from the testimony that the petitioner has in large measure succeeded in fixing and controlling the retail price of its coffee in interstate trade; that this result has been accomplished, not through individual effort alone, but by combination and through co-operation with its salesmen and customers, and that this latter element renders the method of competition unfair. The case differs in degree and not in kind from the Beech-Nut Co. Case, supra, where the court said:

"From this course of conduct a court may infer, indeed cannot escape the conclusion, that competition among retail distributors is practically suppressed; for all who would deal in the company's products are constrained to sell at the suggested prices. Jobbers and wholesale dealers who would supply the trade may not get the goods of the company, if they sell to those who do not observe the prices indicated or who are on the company's list of undesirables, until they are restored to favor by satisfactory assurances of future compliance with the company's schedules of resale prices. Nor is the inference overcome by the conclusion stated in the commission's findings that the merchandising conduct of the company does not constitute a contract or contracts whereby resale prices are fixed, maintained, or enforced. The specific facts found show suppression of the freedom of competition by methods in which the company secures the co-operation of its distributors and customers, which are quite as effectual as agreements express or implied intended to accomplish the same purpose. By these methods the company, although selling its products at prices satisfactory to it, is enabled to prevent competition in their subsequent disposition by preventing all who do not sell at resale prices fixed by it from obtaining its goods. Under the facts established, we have no doubt of the authority and power of the commission to order a discontinuance of practices in trading, such as are embodied in the system of the Beech-Nut Company."

[11] A case directly in point is Oppenheim, Oberndorf & Co., Inc., v. Federal Trade Commission (C. C. A.) 5 F.(2d) 574. The petitioner offered considerable testimony tending to show the evils resulting from price cutting

and selling below cost, but, as said by Judge Lurton in John D. Park & Sons Co. v. Hartman, 153 F. 24, 46, 82 C. C. A. 158, 180 (12 L. R. A. [N. S.] 135): "This is an argument better addressed to legislative bodies than to the courts."

For the reasons stated, we are of opinion that the several objections urged against the order to cease and desist are without merit, and the order is accordingly affirmed.