## PARKE, AUSTIN & LIPSCOMB, Inc., et al. v. FEDERAL TRADE COMMISSION.

No. 238.

Circuit Court of Appeals, Second Circuit.

April 19, 1944.

Marlow & Hines, of New York City (Ernest W. Marlow and Richard Lincoln, both of New York City, of counsel), for petitioners.

W. T. Kelley, Chief Counsel, and Eugene W. Burr and Randolph W. Branch, Sp. Attys., Federal Trade Commission, all of Washington, D. C., for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The petitioner Parke, Austin & Lipscomb, Inc., is a corporation which since 1914 has been engaged in the publication and distribution of books. The petitioner Smithsonian Institution Series, Inc., is a subsidiary corporation wholly owned by Parke, Austin & Lipscomb, Inc. The petitioners Monett, Hogan and McAndrews are officers of the two corporations.

In 1926 negotiations between the Smithsonian Institution of Washington, D. C., and Parke, Austin & Lipscomb, Inc., culminated in an agreement whereby a set of books written and edited by the scholars of the Institution would be published and distributed by a subsidiary corporation to be organized by Parke, Austin & Lipscomb, Inc., for the express purpose. A quarter of a million dollars was placed in escrow by the petitioners to ensure their proper preparation and distribution of the volumes, and a ten per cent royalty was agreed upon for payment to the Smithsonian Institution.

The name of Smithsonian Institution Series, Inc., was adopted for the subsidiary corporation at the request of a member of the board of regents of the Institution, whose expressed desire was to indicate by the name adopted that a relationship existed between the Institution and its publisher, and at the same time to limit the publisher to the manufacture and distribution of books issued by the Institution and designed to make its vast resources more readily available to the American people, as a "pocket edition of the Institution in all its activities."

Preparation of the manuscript was completed in 1932, and thereafter thirteen volumes comprising the "Smithsonian Scientific Series" were published. The work was done according to the agreement by the petitioner Smithsonian Institution Series, Inc., which employed a staff of several hundred salesmen engaged solely in the distribution of the books.

Testimony taken at the hearing before the Commission's trial examiner shows that some 250,000 prospects were interviewed over a period of years and that more than 34,000 sets of books were sold to purchasers throughout the country. A number of complaints were received from time to time from persons solicited by the petitioners' salesmen, most of them asserting that they had been misled by statements made to them by the salesmen. This proceeding and the order under review were the culmination of these complaints.

The trial examiner and the Commission found that in the course of offering their books to the public the petitioners made various misleading statements and misrepresentations having the purpose and effect of causing prospective purchasers to believe that the books were published and sold by the Smithsonian Institution of Washington, D. C., that the salesmen were in the employ of the Institution, that the entire selling price accrued to it, and that only a relatively small selected group of persons were being offered an opportunity to purchase the books because by virtue of social standing or influence or some commendable deed they were specially entitled to become patrons of the Institution.

The order to cease and desist from these practices contains six parts or paragraphs and enjoins the following activities: (1) Representing that the petitioners' salesmen are employed by or directly connected with the Smithsonian Institution of Washington, D. C.; (2) representing that the books are published by the Institution and that it receives all the proceeds from sales; (3) representing to persons solicited that they have been selected from the public at large for special consideration or that they have been singled out to be patrons of the Institution; (4) making use of "patron certificates" in such a manner as to imply that the individual prospects have been specially selected for any reason or that the enterprise benefited is other than an ordinary commercial venture; (5) using the words "Smithsonian Institution" in their corporate name or in any other connection to designate a commercial enterprise which in fact is not a part of or directly connected with the Institution in Washington; and (6) representing that the petitioner is engaged in anything other than a commercial enterprise for profit.

The evidence shows that in a substantial number of isolated instances the petitioners' salesmen approached prospective customers and did endeavor to better their chances of making sales by falsely representing directly or indirectly that they were employed by the Smithsonian Institution, and did make the other misstatements condemned by the Commission's order. The petitioners presented evidence that they habitually instructed all their salesmen to explain fully the true relationship existing

between the Institution and the publisher and to make sure that no false impression would be gathered by the persons interviewed. All prepared sales talks were checked and approved by the petitioners, and deviations by salesmen which tended to give false impressions were followed up by disciplinary action which frequently included discharge of the offenders. In all instances of complaint on the part of purchasers that they bought the books because of misrepresentations by the salesmen, the contracts of purchase were cancelled and the price refunded.

■ Such was the zeal of the petitioners, we are told, to avoid any semblance of an unfair practice in their dealings with the public, and it is argued that their efforts in this direction relieve them of the interdiction of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. But however unauthorized the offending conduct of the salesmen may have been and however condemned and discouraged by their superiors, it still was conduct which subjects the employers to the jurisdiction of the Commission and to its cease and desist order. Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F.2d 692, 697.

An adequate answer to the contention that the petitioners themselves have done nothing to mislead the public in violation of the spirit and the text of the Act is to be found in the materials which they furnished to the salesmen to assist them in their work. These materials include a broadside description of the series of books, profusely illustrated with pictures of prominent members of the board of governors of the Institution and describing at length the Institution and its work. No reference is made to the separate corporation publishing the books, and unless the salesmen affirmatively pointed out its existence the readers of this broadside might readily be led to believe that the Institution there so fully discussed was the publisher of the books. There is also included among the salesmen's materials a statement by the secretary of the Smithsonian Institution describing the series of books being published and discussing the motives which impelled the Institution to bring them out. Again there is no reference to Smithsonian Institution Series, Inc., and no mention that publication of the books was undertaken by a private organization for its own profit. Moreover, in the complete and the short forms of the "authorized presentation" or sales talks there is a reference characterizing the actual publishers as "friends" of the Institution who came forward and assisted it in the work of publication, inviting the conclusion that they were actuated by friendship rather than the prospect of business profits. This presentation also tends to indicate, without baldly asserting it, that the persons approached by the salesmen have been carefully selected from the public at large for the purpose of being invited to share the privilege of becoming patrons of the Institution by buying its books.

■ The use of these devices tending to mislead the public, making up in part what are ostensibly carefully worded presentations of the true facts surrounding the publication of the books, made the petitioners active participants in the kind of unfair trade practices condemned by the Federal Trade Commission Act. Whether any deception was actually intended or not, the evidence is ample to support the Commission's finding that it was accomplished.

■ The suggestion is made, but not pressed very strongly, that under rule 16 of the Commission's trade practice conference rules for the subscription and mail order book publishing industry the obligation upon the petitioners does not extend beyond the exercise of due diligence to prevent their salesmen from misleading the public, and the petitioners assert that they have fulfilled this obligation. They point to the care with which they select and instruct their salesmen and to the relatively small number of complaints that have been made in proportion to the large number of prospects interviewed. Compare, Harriet Hubbard Ayer, Inc., v. Federal Trade Commission, 2 Cir., 15 F.2d 274, 277, 278, certiorari denied 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 878. They are, indeed, entitled to commendation for so doing, but this argument overlooks a further provision of the rule, which states that all literature and other aids supplied to the salesmen must be "free from misleading or false implications or other matter which may tend to deceive or mislead." Title 16, § 150.16, Code of Federal Regulations, 1940 Supplement, page 1401. It is clear from what we have already said about the broadsides, prepared sales talks and other literature supplied by the petitioners to their

salesmen that they have not complied with all the requirements of the regulation which they cite.

It is contended that after a previous investigation by the Commission in 1937 the petitioners were completely exonerated from any wrongdoing, and that because their trade practices have not changed since that time there is no occasion now for a second inquiry into the same matters. That, however, is a matter for the Commission to decide in its discretion since in its letters exonerating the petitioners it expressly stated that the files were closed "without prejudice to the right of the Commission to reinstate the matter if conditions should warrant."

The petitioners next urge that they are not engaged in competition with anyone else in the publishing field, for they assert that the "Smithsonian Scientific Series" of books is not encyclopedic in nature and does not compete with the books marketed by a publishing house whose witnesses at the hearing gave evidence intended to show the existence of competition. But whether or not this is so, the point is quite irrelevant. Since the amendment of § 5 of the Act in 1938, 52 Stat. 111, 15 U.S. C.A. § 45, the Commission has had jurisdiction of all cases in commerce affecting the public interest whether or not competition is involved. Scientific Manufacturing Company v. Federal Trade Commission, 3 Cir., 124 F.2d 640, 643, 644; Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564, 567.

Nor is there merit in the petitioners' contention that the Commission has not demonstrated the existence of a public interest. As this court said in L. & C. Mayers Company v. Federal Trade Commission, 2 Cir., 97 F.2d 365, 367, "it is in the interest of the public to prevent the sale of commodities by the use of false and misleading statements and representations." And the Commission's intervention is warranted even if the misrepresentations go no further than to state or to imply that the maker of an article is other than the true one; the public interest requires its protection against this sort of misrepresentation, though the purchaser receive in the transaction an article of equal value in quality and workmanship. Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 216, 217, 53 S.Ct. 335, 77 L.Ed. 706. Nor is it important that in this case the

trial examiner did not explicitly find that the public interest is involved. The question of public interest is a matter upon which the Commission was competent to pass and it is sufficient for present purposes that the complaint alleged the existence of a public interest which the proof shows was necessarily involved in the merits of the case. Hills Brothers v. Federal Trade Commission, 9 Cir., 9 F.2d 481, 483, 484, certiorari denied 270 U.S. 662, 46 S.Ct. 471, 70 L.Ed. 787.

The petitioners contend that there is no warrant for the fifth paragraph of the Commission's order forbidding their use of the words "Smithsonian Institution" in their corporate name or in any other manner to designate a commercial enterprise which is not a part of or directly connected with the Institution at Washington. They object that this part of the order is beyond the reach of the Commission because there has been no complaint by the Institution and because, as they say, there already existed sufficient safeguards to prevent confusion on the part of the public. As to the first reason, it is enough to point out that the Institution would be unlikely to complain since its board of regents and the petitioners had agreed upon the name to be given the corporation and that no such complaint is required since the Federal Trade Commission Act is designed to redress public grievances. Federal Trade Commission v. Klesner, 280 U.S. 19, 25, 50 S.Ct. 1, 74 L.Ed. 138, 68 A.L.R. 838. Likewise without merit is the contention which seems to be made that the confusion of the complaining purchasers of books is not properly cognizable by the Commission because the purchasers should not have been misled. Not this but what in fact occurred is the test, and the issue is foreclosed by the Commission's justified finding that members of the buying public were in fact misled despite the petitioners' use of various protective devices, such as specific reference to the publisher's separate identity which was made on the petitioners' letterhead and in the subscription agreement signed by all purchasers.

The petitioners are standing upon much firmer ground when they insist that this paragraph in the order is needlessly severe in its sweeping requirement that the words "Smithsonian Institution" must be eliminated from the corporate name of petitioner Smithsonian In-

stitution Series, Inc. There may well be some alternative remedy less drastic but adequately effective which might satisfy the requirements of fairness and should be adopted. On this record, however, we cannot be sure that the Commission has abused its discretion in this respect, and only in that event should we interfere with its action. Compare, Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207.

■ Another paragraph of the order circumscribes the use of "patron certificates" issued by the Smithsonian Institution of Washington, D. C., to purchasers of the books. The evidence shows that upon making a sale the petitioners send the name of the purchaser to the Institution, which enrolls the name on its records and issues to the purchaser a certificate stating that he has been made a "patron" in recognition of his contribution to the Institution's program of diffusing knowledge among men. There is nothing unfair or unlawful about this practice, but there is evidence in the record from which the Commission properly found that the petitioners' salesmen made wrongful use of it. They exhibited specimen certificates to prospective purchasers in such a manner as to induce the impression that they were representatives of the Institution at Washington rather than of a commercial publishing house, and they stated falsely that the individual persons being interviewed had been singled out by the Institution for the honor of being made patrons. It is this improper use of the certificates and the misrepresentations made by the salesmen in connection with them which are condemned by the fourth paragraph of the Commission's order to cease and desist. We do not understand it to go beyond that or to limit the right of the Institution to issue patron certificates to purchasers.

From 1936 until 1942 the petitioner Parke, Austin & Lipscomb, Inc., was engaged also in the publication and distribution of a series of books entitled "World Epochs," of a patriotic nature and intended to combat subversive influences. In the beginning the petitioner operated under a contract with the Veterans of Foreign Wars National Home, to which it paid a royalty on sales in return for the organization's endorsement of the series of books. In 1938 this arrangement was terminated and a contract was entered into by the petitioner with the United States Flag Association, a corporation organized under federal laws and having as its object the defeat of subversive forces and the perpetuation of American traditions and institutions as symbolized by the flag. Under this contract and a later substituted one the petitioner paid a royalty to the Flag Association and the latter furnished bulletins and letters from prominent persons recommending the books to the purchasing public.

■ In its complaint the Commission charged the petitioner with various unfair trade practices in the distribution of "World Epochs," similar to those charged in connection with sale of the "Smithsonian Scientific Series," and in its cease and desist order it required that these unfair methods should likewise be discontinued. The petitioner's contract with the United States Flag Association was terminated in 1942, however, and since that time it has not been engaged in the sale of "World Epochs." Instead of seeking to review that part of the cease and desist order which concerned its relationship with the Flag Association, the petitioner filed with the Commission a certificate of compliance. It did not concede any unfair trade practices, but it elected not to contest the Commission's order in this respect, believing that the issues had become moot. That, however, does not follow. Federal Trade Commission v. Goodyear Tire & Rubber Co., 304 U.S. 257, 260, 58 S.Ct. 863, 82 L. Ed. 1326. Notwithstanding the certificate of compliance, that portion of the order remained in force and continues to bind the petitioners. We think those parts of the order are severable from the rest. And since no petition to review them was filed, they became final at the expiration of the time allowed therefor. 15 U.S.C.A. § 45 (g) (1).

Petition dismissed and order enforced.

SWAN, Circuit Judge (concurring specially).

In my opinion paragraph (5) of the Commission's order, which forbids the use of the words "Smithsonian Institution" in respondent's trade or corporate name, is unnecessarily drastic. Until recently this court would have regarded itself as competent to modify an order which imposed a restraint broader than the necessities of the case required, as was done in Federal Trade Com. v. Royal Milling Co., 288 U.S. 212, 218, 53 S.Ct. 335, 77 L.Ed. 706, and Bear Mill Mfg. Co. v. Federal

Trade Com., 2 Cir., 98 F.2d 67, 69. But in Herzfeld v. Federal Trade Commission, 140 F.2d 207, we held that later decisions of the Supreme Court had in effect overruled the doctrine of the Royal Milling case, and that the court is now forbidden to disturb that measure of relief which the Commission thinks necessary to protect against unfair methods of competition. Only because I feel constrained to follow the Herzfeld decision regardless of my personal views, am I willing to concur in affirming paragraph (5) of the order.