**TRACTOR TRAINING SERVICE, a corporation, Tractor Training Service, Inc., a corporation, and Joy E. Badley, Petitioners,**

**v.**

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 14346.**

United States Court of Appeals
Ninth Circuit.

Nov. 7, 1955.

Rehearing Denied Dec. 12, 1955.

**422**

McDannell Brown, Portland, Or., for petitioner.

Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, Alan B. Hobbes, Federal Trade Commission, Washington, D. C., for respondent.

Before HEALY, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

The Federal Trade Commission, acting pursuant to the provisions of 15 U.S.C.A. § 45, conducted hearings and found that petitioners, in the course of certain sales and advertising activities, did employ false and misleading representations which constituted unfair and deceptive acts and practices in commerce contrary to the Federal Trade Commission Act, 38 Stat. 717 (1914), as amended, 15 U.S. C.A. §§ 41-58. A cease and desist order was issued. Petitioners seek a review. 15 U.S.C.A. § 45(c).

Tractor Training Service, an Oregon corporation with headquarters in Portland, and Tractor Training Service, Inc., an Illinois corporation with Chicago headquarters, are substantially owned and controlled by Mr. Joy E. Badley. The Commission found that petitioners "are now and have for more than three years last past engaged in the sale and distribution of a course of study and instruction consisting of forty-six lessons on the subject of diesel engines and tractor equipment * * *." The course consists entirely of home study assignments. There is no laboratory training provided. The price for the course is $275, less certain discounts. In 1951 more than 2200 students were enrolled.

In 1948 petitioners Joy E. Badley and Tractor Training Service entered into a stipulation with the Commission which recognized that in the course of their advertising and field selling petitioners had misrepresented, in certain particulars, the benefits to be derived from their home study course. Petitioners agreed to desist from future falsifications and to refrain from making representations that companies in the diesel and tractor industries were backing or interested in petitioners' program; that graduates of the study course were in demand in the diesel industry; that the school maintained an employment service capable of procuring positions for its graduates, except so far as the school in fact provides this facility; that applicants for petitioners' program were screened to determine their qualification for petitioners' course; that on the job training is available and that refunds could be had in the event of failure to pass examinations, finish the course, or secure employment.

In 1952 the Commission served its complaint charging petitioners with ignoring its agreement and continuing to employ misleading statements both oral and written. Hearings were held by a trial examiner and at the conclusion thereof he made findings of fact which in large part were adopted by the Commission on appeal.

The first contention relied on by petitioners relates to an alleged violation by the Commission of the provisions of the Administrative Procedure Act, 60 Stat. 237 (1946), 5 U.S.C.A. §§ 1001–1011. Sec. 11 of the Act, 5 U.S.C.A. § 1010, provides in part that hearing examiners "shall be assigned to cases in rotation *so far as practicable * * *"* and § 8(a), 5 U.S.C.A. § 1007(a), provides in part that "the officer who presided * * * shall initially decide the case * * * ."

Hearings in this case were first held in Washington, D. C., starting March 10, 1952, and continuing for two days. At this hearing Examiner J. Earl Cox presided. J. E. Badley was the only witness examined. Examiner Cox ordered a recess until April 24, 1952, at which time the hearings were resumed with Examiner Everett F. Haycroft in charge. The

substitution of examiners was promptly challenged by petitioners as a violation of the requirement that examiners be assigned in rotation. In overruling the objection the Commission gave as its reason for the substitution of Examiner Haycroft that other hearings were to be held by him in the western part of the United States where future hearings in the instant case were scheduled, hence the substitution was in the interests of economy. At the resumed hearings of the case Examiner Haycroft offered to strike all testimony previously taken and begin anew or, at petitioners' option, to consider the transcript of testimony theretofore taken. Petitioners stood on their objection to a change of examiners. A transcript of the testimony of Mr. Badley, taken in Washington, D. C., was introduced at a subsequent hearing in Portland, Oregon, and at the Portland, Oregon hearing Mr. Badley again testified, covering substantially the entire ground gone over in the Washington, D. C., hearing.

■ Section 8(a) of the Administrative Procedure Act provides that the initial decision shall be made by the hearing officer who presided. Examiner Haycroft made the initial decision. The fact that he did not preside over the Washington hearings in no manner changed this situation. Examiner Haycroft heard all the evidence and from the evidence formulated the first and only decision rendered. We think this was a full compliance with the requirements of § 8(a).

It is contended that the substitution of examiners violated § 11, 5 U.S.C.A. § 1010, which requires that hearing examiners "shall be assigned to cases in rotation so far as practicable." [1] Reliance is placed by petitioners on Wong Yang Sung v. McGrath, 1949, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; United States v. L. A. Tucker Truck Lines, 1952, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54; and Ramspeck v. Federal Trial Examiner's Conference, 1953, 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872.

In Wong Yang Sung v. McGrath, supra, the Supreme Court determined that the administrative hearings in deportation cases must conform to the requirements of the Administrative Procedure Act.[2] That case does not purport to determine the allowable scope of an administrator's discretion in assigning cases "in rotation so far as practicable."

The case of United States v. Tucker Truck Lines, supra, dealt with an alleged error of the Interstate Commerce Commission in assigning a hearing examiner who had not been appointed in accordance with the requirements of § 11, 5 U.S.C.A. § 1010. It was held that petitioner in that case had waived his objection by his failure to raise it below. The present case is distinguishable from what was said in the Tucker case in this: Examiner Haycroft is a duly appointed and qualified hearing officer. In the Tucker case the hearing officer was not.

In the Ramspeck case, supra [345 U.S. 128, 73 S.Ct. 576], the Supreme Court addressed itself for the first time to the question of the scope of discretion contemplated by the phrase " *'in rotation so far as practicable.'* " It held that the Act contemplates a modicum of discretion on the part of the agency and that the classifications which the Civil Service Commission had made were a permissible modification of the rotation rule.

■ We learn from the briefs that several federal agencies [3] have interpreted § 11 as allowing them to deviate from mechanical rotation in the interests of economical operation. The substitution here was made early in the proceedings. Petitioners were afforded an opportunity to start anew. There is no suggestion

1. See also, Federal Trade Commission, Rules of Practice, Rule XIV, 15 U.S.C.A. following section 45 to the same effect.

2. Congress subsequently exempted immigration cases from §§ 5, 7 and 8 of the Administrative Procedure Act, 64 Stat. 1048 (1950) repealed 66 Stat. 280 (1952), but see 66 Stat. 209–210, 8 U.S. C.A. § 1252.

3. The Coast Guard, the Civil Aeronautics Board, the Federal Trade Commission, and the Interstate Commerce Commission, are cited as instances.

of any intention on the part of the Commission to deprive petitioners of a fair hearing or that Examiner Haycroft was biased or incompetent. The change of examiners in no way prejudiced petitioners. They do not so contend but insist on a mechanical application of the statute. § 10(e), 5 U.S.C.A. § 1009(e).

In the course of the investigation which preceded the lodging of the complaint, agents of the Federal Trade Commission visited petitioners' offices in Chicago and Portland and requested and were granted access to corporate records. Petitioners claim that the investigators thus acquired a list of delinquent accounts which was used by the Commission to locate student witnesses to testify at the hearings. This, argues petitioners, violated their rights under the IVth Amendment to the Constitution which guarantees freedom from unreasonable search and seizure, and therefore admission of the testimony of the witnesses whose identities the Commission learned from inspection of the corporate records was error.

■ There are three answers to this contention. In the first place no motion was made to suppress the evidence, nor was there objection to its introduction. See Federal Trade Commission, Rules of Practice, Rule XVIII(d); United States v. L. A. Tucker Truck Lines, supra, and Spiller v. Atchison, T. & S. F. Ry. Co., 1920, 253 U.S. 117, 130, 40 S.Ct. 466, 64 L.Ed. 810. Second, the record discloses that petitioners freely consented to the inspection and cooperated with the agents. Asked whether he had supplied the agents with specimens of advertising copy, Mr. Frederick L. Innes, executive vice-president of Tractor Training Service, Inc., replied: "I have no recollection of his asking for it. If he did ask for it why, I would have supplied it, because there was nothing to hide in relation to the business or the nature of our advertising or anything else. And he thanked me for my cooperation and that is the last I ever heard of him." Finally, § 9 of the Federal Trade Commission Act, 38 Stat. 722, 15 U.S.C.A. § 49, provides stat-utory authority for Commission inspection of corporate documents such as those here involved. A reasonable demand pursuant to that authority does not violate the IVth Amendment; United States v. Morton Salt Co., 1950, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401; see Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Bloch v. United States, 9 Cir., 1955, 226 F.2d 185.

■ Petitioners complain that the Commission heard only dissatisfied customers selected on the basis of their dissatisfaction and who were further "disgruntled" by statements made to them by Commission representatives. Twenty-seven student witnesses testified on behalf of the Commission. Seven of these, say petitioners, admitted that Commission representatives sought to prejudice them against the company in pre-hearing conferences.

■ The record does not support this claim. The statements of said seven witnesses as to their interviews with Commission representatives are sketchy and ambiguous. Some of the seven claim that the agents suggested to them that they, the students, would derive little practical value from the course. Others of the seven flatly denied that any such assertions were made to them. We find no misconduct on the part of the agents, and, further, the credibility of the witnesses was a matter for the hearing examiner and Commission to resolve. Steelco Stainless Steel Inc., v. Federal Trade Commission, 7 Cir., 1951, 187 F. 2d 693.

■ Complaint is made that prejudice resulted from the procedure adopted by the Commission in conducting numerous hearings from place to place throughout petitioners' sales territory. This procedure was adopted to avoid the necessity of transporting all the witnesses from their scattered residences to any one hearing place, a procedure employed to minimize the costs of the proceedings to both parties, which seems entirely reasonable.

■ Petitioners argue that Joy E. Badley should not have been made a party to the order. He is president of the Oregon corporation and Chairman of the Board of Directors of the Chicago corporation. He owns all but one share of the stock of each. He testified that he alone is responsible for promulgating the advertising and that he supervises the field agents, receiving daily reports on each man in the field. On these facts the Commission was justified in concluding that it was necessary to include Mr. Badley in its order so as to make it fully effective in preventing the practices it found illegal. Federal Trade Commission v. Standard Education Society, 1937, 302 U. S. 112, 58 S.Ct. 113, 82 L.Ed. 141; Standard Distribution v. Federal Trade Commission, 2 Cir., 1954, 211 F.2d 7.

■ It is contended that the findings are not supported by substantial, reliable and probative evidence. The material facts found were: That certain representations as to benefits to be derived from petitioners' tractor training course and the procedures they employed in teaching the course as made to prospective students were untrue. Facts supporting the finding were derived from the testimony of twenty-seven student witnesses; from admissions contained in the 1948 stipulation as to the practices at that time; from samples of advertising copy in evidence, and the testimony of eleven expert witnesses, consisting of engineering professors and representatives of the diesel and tractor industries, including persons directly concerned with the hiring and firing of diesel mechanics. The testimony of these last named witnesses was to the effect that graduates of petitioners' tractor training course were not qualified mechanics and were not in demand in the diesel and tractor industries. Cf. Consumers Home Equipment Co. v. Federal Trade Commission, 6 Cir., 1947, 164 F.2d 972; and Hills Bros. v. Federal Trade Commission, 9 Cir., 1926, 9 F.2d 481.

■ The Commission's order is said to be vague. We do not think so. It prohibits petitioners from making certain specified misrepresentations. Paragraph Six is specifically pointed out. This paragraph prohibits petitioners from representing "that the earnings of individuals completing respondent's course of study are in excess of the average net earnings consistently made by individuals who have completed such course over substantial periods of time under normal conditions and circumstances." This seems plain enough to us. It does not preclude all future representations by petitioners of the earning experience of their graduates. It does preclude representations that petitioners' graduates earn wages in excess of the average net earnings which they actually receive. In short, the order says no more than that future representations by petitioners must have a basis in fact. The order is clear and definite and within the discretion delegated by Congress to the Commission to prescribe appropriate remedies. See Charles of the Ritz Dist. Corp. v. Federal Trade Commission, 2 Cir., 1944, 143 F.2d 676, 679.

Order affirmed.