**FEDERAL TRADE COMMISSION v. HIRES TURNER GLASS CO.**

No. 5591.

Circuit Court of Appeals, Third Circuit.
July 11, 1935.

On Petition for Modification of Judgment
Dec. 20, 1935.

Rehearing Denied Feb. 3, 1936.

Robert E. Healy, Harry D. Michael, and Martin A. Morrison, all of Washington, D. C., for petitioner.

Leon Edelson, of Philadelphia, Pa., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

·The Federal Trade Commission, the petitioner, charged Hires Turner Glass Company, the respondent, with unfair competition in interstate commerce in violation of section 5 of the Federal Trade Commission Act (15 USCA § 45) and issued the following cease and desist order:

"  *   *   * It is ordered that respondent, Hires Turner Glass Company, a corporation, its officers, directors, agents, representatives, servants, and employees in connection with the sale, offering for sale, or distribution in interstate commerce, of mirrors having thereon a protective coating consisting of a mixture of shellac and powdered copper, cease and desist from designating the same as 'copper-back' mirrors, 'copper-backed' mirrors, mirrors 'backed with copper,' or by other word, words, or expression of the same meaning or like import. * * *"

The respondent refused to comply with this order. The petitioner thereupon filed an application for an enforcement order in this court. The respondent contends that there is no evidence that the terms "copper-back," "copper-backed," or "backed with copper" are not properly descriptive of its mirrors; or that trade is diverted to the respondent because of its use of the prohibited terms; or that such use tends to deceive the trade and purchasing public.

In approaching these issues, we bear in mind the admonition in Federal Trade Commission v. Algoma Lumber Co., 291 U. S. 67, 73, 54 S. Ct. 315, 318, 78 L. Ed. 655, where the Supreme Court said: " 'The findings of the Commission as to facts, if supported by testimony, shall be conclusive.' 15 U. S. C. § 45 (15 USCA § 45). The Court of Appeals [64 F.(2d) 618], though professing adherence to this mandate, honored it, we think, with lip service only. In form the court determined that the finding of unfair competition had no support whatever. In fact what the court did was to make its own appraisal of the testimony, picking and choosing for itself among uncertain and conflicting inferences. Statute and decision (Federal Trade Commission v. Pacific States Paper Trade Ass'n, 273 U. S. 52, 61, 63, 47 S. Ct. 255, 71 L. Ed. 534) forbid that exercise of power."

What facts did the petitioner find? Are these facts supported by testimony? We summarize the findings of fact:

The respondent is a Pennsylvania corporation engaged in the manufacture of mirrors and in their sale in interstate commerce. In 1930 the respondent began to manufacture in commercial quantities and to sell in interstate commerce mirrors having a protective coating or backing consisting of a mixture of shellac and powdered copper. The mixture was applied by brush or spray either immediately next to the reflecting medium or separated therefrom by an intervening coating of ordinary mirror-backing paint, in accordance with a process owned by the Peacock Laboratories, Inc. The respondent was the first licensee of the Peacock Laboratories, Inc., to advertise and sell mirrors as "copper-back," "copper-backed," and "backed with copper," when prepared by the above process. The same terminology was used by the respondent, its officers, agents, and representatives, in letters, invoices, communications, and conversations with the trade. Prior to the respondent's use of this process, those terms had acquired a fixed meaning in the trade and signified mirrors backed with a solid sheath or film of copper deposited upon the reflecting medium by an electrolytic or electro-plating process. The mixture of shellac and powdered copper does not form a solid metallic copper coating or film. The metallic element is not continuous, nor are the particles of copper in metallic contact, since each particle of copper is surrounded by a film of shellac and no part of the copper is adherent to or in metallic contact with the reflecting medium. The respondent's type of mirror sells for slightly more than ordinary mirrors and for considerably less than electrolytic copper-back mirrors, since its manufacture does not require special equipment. The use of the prohibited terms, when applied to the respondent's mirrors, has a tendency and capacity to confuse, mislead, and deceive the trade and public and to divert trade to the respondent.

The following is a summary of the testimony upon which the petitioner based its findings:

Electrolytic copper-back mirrors had been known since 1858 and had been imported in large quantities from England, France, Belgium, and Holland from 1900 until the World War and thereafter in lesser quantities. The terms generally used to describe and designate these imported mirrors were "copper-back," "copper-backed," or "backed with copper," literal translations of the French "dos cuivre" and the German "verkupfert." English mirrors, on which were stamped "copper-backed," and which were similar to those imported between 1902 and 1914, were offered in evidence. Electrolytic copper-back mirrors

had been manufactured in the United States for approximately forty years. In 1925 the Pittsburgh Plate Glass Company began the production of electrolytic copper-back mirrors on a large commercial scale. It placed a label containing the term "copper-back mirror" on every such mirror manufactured by it. It used this terminology in advertising, circulars, and magazine articles, as well as in correspondence, invoices, and orders. The only use of this terminology, prior to its use by the respondent, had been in its application to electrolytic copper-back mirrors. Trade was diverted from the makers of electrolytic copper-back mirrors because of the comparatively low price of the respondent's mirror, and from the makers of ordinary mirrors because of the general belief that copper-back mirrors are superior to painted back mirrors.

It may well be that, had this court been a fact-finding tribunal, it might have reached conclusions other than those reached by the petitioner. The petitioner, however, had before it ample evidence upon which to find that the terminology had acquired a secondary meaning, prior to its use by the respondent, and that the respondent's mirrors did not contain the essentials of genuine copper-back mirrors. Inasmuch as it is the duty of the Commission to determine the facts, it is our duty to sustain the Commission if there is any substantial evidence upon which its findings are based. Federal Trade Commission v. Artloom Corporation (C. C. A.) 69 F.(2d) 36.

■ Even though there was no evidence of actual deception, the natural and probable result of the use of descriptive names, which do not properly describe the respondent's product, has the tendency and capacity to deceive. Federal Trade Commission v. Balme (C. C. A.) 23 F.(2d) 615; Notaseme Hosiery Co. v. Straus (C. C. A.) 201 F. 99. As was said by the Supreme Court in Federal Trade Commission v. Algoma Lumber Co., supra: "The consumer is prejudiced if upon giving an order for one thing, he is supplied with something else. * * * In such matters, the public is entitled to get what it chooses, though the choice may be dictated by caprice or by fashion or perhaps by ignorance."

So, if the purchaser orders a copper-back mirror in the justifiable belief that he will receive a mirror with a backing consisting of a solid sheath of copper electrolytically applied to the reflecting medium, and receives, instead, a mirror having a backing of shellac and powdered copper, he is prejudiced.

The order of the Federal Trade Commission is affirmed. An enforcement order may be entered in accordance with the prayer of the petition.

■ There is pending before us the respondent's motion for a writ of certiorari for diminution of the record. We are asked to order the Federal Trade Commission to certify to this court the report of the trial examiner. As we have indicated, the Commission's findings of fact are conclusive if supported by any evidence. In the absence of proof that the fact findings are not so supported, there is no substantial ground for the granting of the respondent's motion. It is accordingly denied.

*Upon Petition for Modification of Judgment.*

Before DAVIS and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

■■ The Federal Trade Commission Act confers authority upon this court to enforce, set aside, or modify orders of the Commission (section 5 [15 U.S.C.A. § 45]), but, we think, does not confer authority upon the court to make rulings as to what name, or names, comply with the cease and desist order prior to action thereon by the Commission. If, however, the Commission's order is so comprehensive as to prevent respondent from using such designations for its mirrors as are accompanied by qualifying terms which clearly signify that its copper backing is not electrolytically applied, it may be modified to that extent.

The Commission's cease and desist order is accordingly modified by adding thereto the following: "Provided, however, that the respondent may use such designations as are accompanied by qualifying terms which clearly signify that the copper backing on its mirrors is not electrolytically applied."