## BEAR MILL MFG. CO., Inc., v. FEDERAL TRADE COMMISSION.

### No. 305.

Circuit Court of Appeals, Second Circuit.

July 5, 1938.

Curtis, Mallet-Prevost, Colt & Mosle, of New York City (Dudley B. Bonsal, Clarence U. Carruth, Jr., and Kenneth N. La-Vine, all of New York City, of counsel), for petitioner Bear Mill Manufacturing Co., Inc.

W. T. Kelley, Chief Counsel, Martin A. Morrison, Asst. Chief Counsel, James T. Welch, and James W. Nichol, Sp. Atty., all of Washington, D. C., for respondent Federal Trade Commission.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The petitioner, Bear Mill Manufacturing Company, Inc., was incorporated in 1907 under the laws of the State of New York. For many years before, a partnership, of which it was the successor, bore the same name. Neither it, nor its predecessor, was strictly a manufacturer, nor did either own or operate a mill or factory. They purchased unfinished cotton or rayon goods, had them sent to another concern which they did not own, control or operate, for finishing, bleaching, dyeing, or printing and then sold them to be made up into garments. The petitioner is technically known as a "converter", that is, a person that buys unfinished goods from the mills, has them finished by a processor and sells the finished products.

The Commission filed a complaint against Bear Mill Manufacturing Company, Inc., alleging that it was using its name containing the words "mill" and "manufacturing" on its letterheads, invoices and other stationery and folders for samples and was selling its product under the representation that it was a manufacturer, when it was not a manufacturer and did not own, control, or operate any mill or factory. The complaint also alleged that certain retail merchants believe that by dealing directly with a mill owner or manufacturer they can buy goods at a lower price and on more favorable terms than they can obtain them from others who are not manufacturers, and can thus eliminate the profits of middlemen. The complaint further alleged that the use of the words "mill" and "manufacturing" by Bear Mill Manufacturing Company, Inc., tends to mislead purchasers and prospective purchasers and to divert trade from concerns that actually manufacture similar goods and thus results in unfair trade.

There was testimony that certain persons in the trade believe buying from a manufacturer rather than from a converter or jobber an advantage both in eliminating the profit of the middleman and in obtaining the newest and best designs. While many of the witnesses said that they could often secure advantageous bargains from converters and jobbers and that price, quality and service would determine their purchases irrespective of whether they were made from a manufacturer or converter, nevertheless some of them testified that they regarded dealing with the manufacturer as desirable and that the descriptive words might lead customers, who did not know that Bear Mill Manufacturing Company was a converter, to suppose that it was a manufacturer.

■ The proof indicated that the retail trade of the company was trivial and that its customers generally knew that it was not itself manufacturing and that those who did not know usually did not care. Indeed, the line between manufacturing itself and supervising the finishing of the product as to color, style and workmanship where, as here, the orders are given to an independent contractor is so tenuous that, upon the record, we regard the damage, if any, to customers or competitors as highly speculative. Yet accuracy of representations implicit in a trade-name indicating whether a concern is a manufacturer, converter or jobber is in general important and it cannot be denied that a misleading name may lead to injurious misapprehensions on the part of customers, actual or prospective, and damage to competitors. We think that the Commission is authorized to guard the public against such dangers. Indeed, it exists to promote fair rules of trade and in so doing to curb practices that involve a likelihood of injury to the public, even if in a particular case the acts complained of are, as here, innocent in purpose and may thus far have done little harm.

Upon the foregoing record the Federal Trade Commission made findings that a substantial portion of the fabric buying public has a preference for dealing direct with a manufacturer of the fabrics being purchased; that such purchasers believe they obtain better prices, superior quality and other advantages in so dealing, rather than with a broker or middleman; that many of petitioner's competitors who sell and distribute cotton and rayon in interstate commerce do not manufacture the products sold by them and do not in any way represent that they are the manufacturers of such products; and that there are also among petitioner's competitors manufacturers of cotton and rayon fabrics sold in interstate commerce who employ the terms "mill" and "manufacturing", or other terms of similar import and meaning, in their corporate names and advertising. The Commission made the further findings that petitioner's practice of representing itself as a manufacturer through the use of the terms "mill" and "manufacturing" has the tendency to mislead a substantial portion of the purchasing public into the erroneous belief that petitioner actually owns and operates or directly controls a mill wherein the products which it sells are manufactured and, that as a result, the buying public has purchased a substantial volume of petitioner's products and trade has been unfairly diverted from competitors who truthfully represent the character of their goods. There can be no doubt that a finding should stand that the erroneously descriptive words in the corporate title and stationery have the tendency to mislead prospective purchasers and the public. Although we may think the likelihood of misleading the class of customers with which the petitioner generally deals is slight, the words have a tendency to mislead customers not entirely familiar with the fact that Bear Mill Manufacturing Company, Inc., is not the manufacturer of the goods they are buying. Just how far the buying public has purchased petitioner's goods and there has been a diversion of trade to it because of the representation that it is a manufacturer cannot be known but, in view of the testimony that some of the purchasing public believes that trade with the manufacturer affords advantages in price and style, we think the finding that the descriptive words have had the effect of diverting some trade and have tended to injure customers to some extent was justified.

■ While a reading of the record fails to convince us that the prejudice, so far as it may have existed or may continue to exist, is of serious importance, yet we cannot say that the findings are not supported by substantial evidence or that the order to cease and desist from the use of the words "mill" and "manufacturing" which the Commission issued in consequence of the findings was without foundation. Federal Trade Comm. v. Pure Silk Hosiery Mills, 7 Cir., 3 F.2d 105.

The injury to the petitioner by the requirement of the order of the Commission that it should abandon a well known corporate and trade-name of many years standing and of evidently excellent repute, seems to us a far too drastic method of remedying a slight and, we believe, unconscious infraction of proper trade practice when the inaccuracy can be cured by requiring the petitioner to append to and use in connection with its corporate name, stationery, folders, labels, cartons and any advertising the words "Converters, Not Manufacturers of Textiles". Federal Trade Comm. v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706; Federal Trade Comm. v. Mid West Mills, Inc., 7 Cir., 90 F.2d 723. We accordingly hold that these words descriptive of the nature of the petitioner's business should be added to the corporate title on all stationery, folders, labels, cartons and advertising without the necessity of amending the certificate of incorporation.

The order of the Commission is so modified and, as thus modified, may be enforced after thirty days which are allowed petitioner in order that it may change its stationery, folders, labels, cartons and any advertising so as to conform to the views we have expressed.

Order modified. Motion to enforce the order as so modified granted.