## JACOB SIEGEL CO. v. FEDERAL TRADE COMMISSION.

### No. 8407.

Circuit Court of Appeals, Third Circuit.

Argued March 7, 1944.

Decided Nov. 30, 1944.

Adhered to on Rehearing Sept. 20, 1945.

Robert T. McCracken, of Philadelphia, Pa. (Leo Weinrott and C. Russell Phillips, both of Philadelphia, Pa., on the brief), for petitioner.

Seymour M. Klein, of New York City (Marshall, Bratter & Seligson and Marvin J. Bloch, all of New York City, on the brief), for amicus curiae.

George W. Williams, of Washington, D. C. (W. T. Kelley, Chief Counsel, of Washington, D. C., on the brief), for respondent.

Before BIGGS, JONES, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The petitioner in this case has been manufacturing overcoats in the City of Philadelphia, Pa. for the last 30 years. In 1930 it developed a cloth for such coats consisting of a combination of alpaca, mohair and wool fibers, on a cotton backing. This was inexpensive and designed for warmth and long wear. The purpose of adding the cotton was to obtain a denser face for the garment than possible with animal fibers alone. That same year the petitioner corporation gave the name "Alpacuna" to the coats. Within two years, the petitioner brought out a top coat which it also called "Alpacuna." The top coat had the same animal fibers as the overcoat but in order to make it lighter, the cotton backing was eliminated.

Among other things, the Federal Trade Commission found that the name "Alpacuna" is misleading and deceptive to a substantial portion of the purchasing public in that it represents or implies to such persons that the coats contain fiber obtained from the animal known as the vicuna. The Commission ordered that the petitioner forthwith cease and desist from "using the word 'Alpacuna' or any other word which in whole or in part is indicative of the word vicuna to designate or describe respondent's coats; * * *" This language is the first part of Paragraph Six of the order. The first five paragraphs and the balance of the sixth paragraph are conceded by the petitioner and do not concern us. The issue has, therefore, been importantly narrowed and simplified.

There was a dissent in the Commission to the part of the order here disputed. It is very short and we quote it in full:

"Commissioner Freer dissents from so much of the order as wholly prohibits the continued use of the trade name 'Alpacuna' for the reason that this trade name, which has been in use for more than thirteen years, is a valuable business asset, and is neither deceptive per se, nor is the testimony concerning its tendency or capacity to deceive sufficiently clear and convincing as to render such prohibition of its use necessary in the public interest."

The only questions involved are: was there substantial evidence supporting the Commission's finding and whether the remedy provided was within its powers.

According to the petitioner's testimony, which was not contradicted, the name "Alpacuna" was created by its sales manager who used a fanciful variation of the word alpaca, which animal represented 50% of the wool fibers in the fabric. To alpaca the suffix "una" was added partly in order to obtain a word that was very easy to pronounce and partly to signify that the Siegel Company was the one manufacturer and the first to make the coat. The head of the Siegel Company testified that he did not have vicuna in mind at all in connection with the name "Alpacuna." He said further: "I was not familiar with it [vicuna] and I have been in business for 30 years and only in the last five years or six years I have heard of Vicuna. I was not interested in it. We never used it." It is undisputed that the vicuna is one of the rarest of animals. It is found principally in the high mountains of Peru and is of the llama family. In order to obtain its hair, the animal itself has to be killed. Such killing

is regulated by law. Vicuna hair is one of the softest, finest animal fibers but has poor wearing qualities. Only a small amount of the fiber comes into the United States. The overcoats made from it, are valuable and run as high as $900. The "Alpacuna" coats retail at $40.

Strong testimony was presented supporting the petitioner's proposition that "Alpacuna" is a proper trade name for the particular coats and that the name does not represent to the public that the coats contain vicuna fiber. There was evidence of a poll taken in the particular section of a large New York department store where such coats were sold. Over 200 customers chosen at random were questioned and not one of them declared that the name "Alpacuna" indicated vicuna to them. There were numerous other witnesses, including: members of the public, reputable people in the clothing trade, department store specialists in protecting customers, a representative of clothing workers, a textile expert, etc. A person connected with the National Better Business Bureau stated he has never received a complaint regarding the name "Alpacuna." One of the functions of that organization is to receive complaints as to merchandise. The only person in the country who manufactures vicuna coats sent a letter to the Commission saying that he had no objection to the use of the name "Alpacuna" by petitioner. In addition to the direct defense testimony, some of the government witnesses supported the defense contention affirmatively by testimony to the effect that "Alpacuna" did not mean vicuna content to them; there were other government witnesses whose testimony was weak; and still others indicating prejudice or bias.

Petitioner also produced testimony tending to show that vicuna in connection with fabrics, denotes a soft finish cloth and argues that it is, therefore, properly applied to petitioner's coats. As to this, the same textile expert described vicuna finish cloth as a soft finish fabric with no definite indication as to its fiber content. This was corroborated by other witnesses. Petitioner introduced some dictionary definitions defining vicuna wool as the wool of the vicuna or a mixture of wool and cotton used for soft fabrics. Petitioner strongly argues that its product is a vicuna cloth, with the dictionary definitions justifying any possible implication in the name "Alpacuna" with respect to vicuna.

Petitioner next stresses the point that vicuna animal fiber and its qualities are not generally known to the public. It calls attention to the admitted rarity of the animal. One expert for the Commission stated that it is almost extinct. It is suggested that because of the extremely limited quantity of vicuna fiber available and because of its perishable quality, it would not be practical to attempt to combine it with alpaca from the standpoint of large scale commercial manufacture. It is contended that the thought of the $40. "Alpacuna" coat capitalizing on the term vicuna is far fetched since most of the potential customers do not have the least idea as to vicuna and the few who do, readily understand that a coat for large production and in the lower price field could not be produced from vicuna fiber.

In addition to the above, there are certain other important facts which appear. This proceeding was started in 1938 and in the original complaint there was no charge against the petitioner for using the name "Alpacuna." After answer had been filed to the original complaint, settlement negotiations were entered into at the suggestion of counsel for the Commission and the Siegel Company executed and returned the stipulation for settlement drawn by the Commission's counsel. That settlement was not approved by the Commission and thereafter an amended complaint was filed which included the allegation regarding the use of the name "Alpacuna." A group of retail stores who handle the "Alpacuna" coats have filed a brief as amicus curiae in support of the petitioner's stand. Those stores set out that they have a very definite interest in the retention of the name by reason of cooperation in extensive advertising and selling the product over a period of years and that the barring the use of the name "Alpacuna" is a matter of serious detriment and direct prejudice to them.

There was also an array of witnesses on behalf of the Commission. The Director of the Bureau of Standards of one of New York's largest department stores said: "I take it this coat is made of a combination of alpaca and vicuna fibers." A person connected with a leading Philadelphia department store stated: "'Alpacuna' overcoats conveys to me Alpaca and Vicuna, a combination of alpaca and vicuna." A housekeeper on cross examination stated she arrived at the impression that the gar-

754

ment was made of alpaca and vicuna as she said, "Well, from the name itself." The assistant director of the Washington Better Business Bureau testified to the same effect. A person who had actually sold the coats for five or six years was of the opinion that they contained alpaca and vicuna fibers. The only person testifying who had purchased an "Alpacuna" coat said that he was told at the time he bought it that the coat was made of "* * * a vicuna wool-bearing South American animal." A number of other persons, including a construction engineer, housewives, a teacher, a physician, a publicity director of a Philadelphia department store, a director of merchandise research of another Philadelphia department store, a clothing salesman for a third Philadelphia department store, several people connected with various clothing houses and men's shops, all associated vicuna with the word "Alpacuna." Most of these witnesses gave their impression after examining one or more of the various Commission exhibits of advertising matter with reference to the coats.

The Commission vigorously disputed petitioner's proposition that vicuna does have an established secondary meaning. It produced dictionaries and encyclopedias in which pictures of the vicuna were shown and also various encyclopedias, dictionaries and textile publications which do not include the secondary meaning of the word as asserted by the petitioner. Other evidence was produced tending to show that vicuna was known to a substantial portion of the public. For example, a letter from a principal of a textile high school in New York City was in evidence and stated that the school had a register of nearly 13,000 students, day and evening, with all of them taking a course in general textiles embracing knowledge of fibers obtained from goats, also sheep, vicuna, alpaca, etc., and that books dealing with the subject, and a wall chart showing pictures with samples of different fibers, vicuna, alpaca, etc. were used in the course. The letter concluded by stating: "I consider that it is part of general education under the head of commercial geography, textiles and dressmaking for the average high school student to know something of alpaca and vicuna and other goat hairs—as well as sheep wool."

Obviously, from the above very brief outline of the evidence, the petitioner has made an impressive showing in its effort to retain the name "Alpacuna." The Siegel Company is a well known and highly regarded concern and its coats have achieved considerable popularity in their own price range. They are widely publicized and large sums of money have been expended by the Siegel Company and various retail stores in merchandising them. The Siegel Company coined the name for the coats in 1930 and has been using it since that time. At this time it is a valuable asset not only to the company but, as the amicus curiae brief points out, to certain retail establishments throughout the United States.

 Just as obviously, it clearly appears that there is substantial evidence supporting the Commission's decision. Even counsel for the petitioner are forced to concede, as stated in their brief: "It is true that a number of witnesses called by trial counsel testified that the name 'Alpacuna' signified a vicuna animal fiber content." Upon the whole record the Commission made a finding that the name "Alpacuna" is misleading and deceptive to a substantial portion of the purchasing public in that it represents or implies to such persons that the coats contain fiber obtained from the animal known as vicuna. The likelihood of misleading the class of customers with which the petitioner generally deals seems slight but in view of the testimony that some of the purchasing public believes that "Alpacuna" implies vicuna content, we cannot say that the finding is not supported by substantial evidence or that the order to cease and desist from the use of the word "Alpacuna" which the Commission issued in consequence of the finding was without foundation. Even assuming that some of the testimony on behalf of the Commission was prejudiced or biased as contended, if the Commission wished to rely upon such testimony, we may not intervene whatever our thought. Segal v. Federal Trade Commission, 2 Cir., 142 F.2d 255. With reference to the secondary meaning of vicuna or vicuna cloth, as said by Mr. Justice Cardozo in Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67 at page 80, 54 S. Ct. 315 at page 320, 78 L.Ed. 655:

"The evidence here falls short of establishing two meanings with equal titles to legitimacy by force of common acceptation."

 The Federal Trade Commission Act, Title 15, § 45(c), U.S.C.A. provides that: "The findings of the Commission as to the facts, if supported by evidence, shall

be conclusive." This means substantial evidence. Federal Trade Commission v. Curtis Publishing Co., 260 U.S. 568 at page 583, 43 S.Ct. 210, 67 L.Ed. 408; Federal Security Administrator v. Quaker Oats, 318 U.S. 218, 227, 228, 63 S.Ct. 589, 87 L.Ed. 724. The fact that there is a real conflict in the testimony with indeed substantial evidence by the petitioner contrary to the finding, does not change the situation, as this court cannot appraise testimony or pick and choose "for itself among uncertain and conflicting inferences therefrom." Federal Trade Commission v. Algoma Lumber Co., supra. It is not necessary in order to sustain the Commission's finding that actual purchases must be made, with the buyer deceived by the name. It is enough if the name has both the capacity and tendency to deceive the ordinary purchaser. Potential injury is the test. Federal Trade Commission v. Raladam Co., 316 U.S. 149, 152, 62 S.Ct. 966, 86 L.Ed. 1336; Federal Trade Commission v. Hires Turner Glass Co., 3 Cir., 81 F.2d 362; Jaffe v. Federal Trade Commission, 7 Cir., 139 F.2d 112. Absolving the petitioner from any deliberate effort to deceive does not affect the Commission's finding. Federal Trade Commission v. Balme, 2 Cir., 1928, 23 F.2d 615, 621, certiorari denied 277 U.S. 598, 48 S.Ct. 560, 72 L.Ed. 1007.

 Although we sustain the Commission on its finding as to the name because of substantial evidence supporting that finding, we think strongly that the order is far too harsh. It destroys a widely and favorably known trade name, in existence for fourteen years. It causes serious injury to the petitioner and its retail outlets. The infraction, as the case now stands, is slight and could be cured by simple qualifying language. We could dispose of the problem by modifying the Commission's order as suggested, if the practice as outlined in Federal Trade Commission v. Royal Milling Co., 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706 and Federal Trade Commission v. Hires Turner Glass Co., supra, a Third Circuit case, was still the law. While the Supreme Court has not dealt with the question of remedy in a Fair Trade Commission suit since the Royal Milling case, there have been a number of opinions from that court concerning remedies prescribed by the Labor Board. In those cases the court has forcibly pointed out that the matter of remedy is also for the administrative agency. In Medo Photo Supply Corporation v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830 where the remedy ordered by the Labor Board was upheld, Chief Justice Stone for the court said in a footnote, 321 U.S. 678, at pages 681 and 682, 64 S.Ct. 830, at page 832:

"It has now long been settled that findings of the Board, *as with those of other administrative agencies,* are conclusive upon reviewing courts when supported by evidence, that the weighing of conflicting evidence is for the Board and not for the courts, that the inferences from the evidence are to be drawn by the Board and not by the courts, save only as questions of law are raised and that upon such questions of law, the experienced judgment of the Board is entitled to great weight. See Franks Bros. Co. v. [National] Labor [Relations] Board, post, 321 U.S. [page 702] 64 S.Ct. 817; National Labor Relations Board v. Southern Bell [Telephone & Telegraph] Co., 319 U.S. 50, 60, 63 S.Ct. 905, 910, 87 L.Ed. 1250, and cases cited; National Labor Relations Board v. Nevada [Consol.] Copper Co., 316 U.S. 105, 106, 107, 62 S.Ct. 960, 86 L.Ed. 1305, and cases cited; cf. Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 246, and cases cited." (Italics ours.)

See also Dixie Pine Products Co. v. Commissioner of Internal Revenue, 320 U.S. 516 at page 519, 64 S.Ct. 364; compare Security Flour Mills v. Commissioner of Internal Revenue, 321 U.S. 281, at page 286, 64 S.Ct. 596; and see cases collected in quotation from opinion in Herzfeld v. Federal Trade Commission, infra.

The Second Circuit, which several times, on the authority of the Royal Milling decision, had modified orders of the Federal Trade Commission[1] has now recognized this in a series of opinions commencing with Herzfeld v. Federal Trade Commission, 140 F.2d 207, where Judge Learned Hand, for the court, said at page 209:

"However, since Federal Trade Commission v. Royal Milling Co., supra, 288 U.S. 212, 53 S.Ct. 335, 77 L.Ed. 706, was decided, the Supreme Court has as much circumscribed our powers to review the decisions of administrative tribunals in point of

---

[1] Bear Mill Mfg. Co. v. Federal Trade Commission, 2 Cir., 98 F.2d 67; Federal Trade Commission v. Cassoff, 2 Cir., 38 F.2d 790; Fluegelman & Co. v. Federal Trade Commission, 2 Cir., 37 F.2d 59.

remedy, as they have always been circumscribed in the review of facts. Such tribunals possess competence in their special fields which forbids us to disturb the measure of relief which they think necessary. In striking that balance between the conflicting interests involved which the remedy measures, they are for all practical purposes supreme. International Ass'n of Machinists v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50; Phelps Dodge Corporation v. National Labor Relations Board, 313 U.S. 177, 198-200, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217; Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 541-543, 63 S.Ct. 1214, 88 L.Ed. 1568; Williams Motor Co. v. National Labor Relations Board, 8 Cir., 128 F.2d 960, 965. It is true that all these decisions concerned the Labor Board, but that tribunal does not enjoy a position of peculiar authority, as the court has indicated in other connections. Gray v. Powell, 314 U.S. 402, 412, 413, 62 S.Ct. 326, 86 L.Ed. 301; Dobson v. Commissioner [of Internal Revenue], 320 U.S. 489, 64 S.Ct. 239; Commissioner [of Internal Revenue] v. Heininger, 320 U.S. 467, 64 S.Ct. 249. In controversies about trade-marks, and particularly about trade-names and make-up, the question is almost always one of degree: i. e., how far the chance of deception outweighs the inconvenience, or worse, to the merchant inevitable in compelling him to change his mark, his name, or his package. The decree marks the compromise which the court thinks adequate and necessary; it is the resultant of those unexpressed determinants which collectively we conceal under the term, 'discretion.' We do not forget that from time immemorial this duty has been entrusted to courts, but that is irrelevant. Congress having now created an organ endued with the skill which comes of long experience and penetrating study, its conclusions inevitably supersede those of courts, which are not similarly endowed."

That was followed by Parke, Austin & Lipscomb v. Federal Trade Commission, 142 F.2d 437, where Judge Chase said at pages 441 and 442:

"The petitioners are standing upon much firmer ground when they insist that this paragraph in the order is needlessly severe in its sweeping requirement that the words 'Smithsonian Institution' must be eliminated from the corporate name of petitioner Smithsonian Institution Series, Inc. There may well be some alternative remedy less drastic but adequately effective which might satisfy the requirements of fairness and should be adopted. On this record, however, we cannot be sure that the Commission has abused its discretion in this respect, and only in that event should we interfere with its action."

The late case of Charles of the Ritz Distributors Corporation v. Federal Trade Commission, 143 F.2d 676, in the same court, with opinion by Judge Clark, is to the same effect. The question, in connection with another administrative agency, the Securities & Exchange Commission, has been before the First Circuit recently in American Power & Light Co. v. Securities and Exchange Commission, 141 F.2d 606 where Judge Magruder for the court said at page 619:

"It is not enough that some other remedy, suggested by petitioners, might accomplish the statutory purposes in whole or in part. The choice of remedy is a matter confided primarily to the expert judgment of the Commission, and in this field the courts are quite properly loath to set up their own judgment in opposition to that of the administrative tribunal."

It is evident, therefore, that the discretion as to the remedy in such controversy as this has now been vested in the Federal Trade Commission. That discretion has been exercised to totally prohibit the use of the name "Alpacuna" to the petitioner. Since the Commission has such power, we are unable, in view of the evidence, to say that the power has been abused in this instance, though under the same facts and circumstances, if we were still in control of the remedy, we would modify the order as above indicated.

Order affirmed.

### On Rehearing.

Before BIGGS, GOODRICH, and McLAUGHLIN, Circuit Judges.

PER CURIAM.

After carefully considering the question of possible modification of the Federal Trade Commission's order, we feel compelled to adhere to our original decision which we confirm.