266 F.2d 787
 ELLIOT KNITWEAR, INC., a Corporation, Elliot Import
Corporation, a Corporation, and Herman Gross,
Individually, and as an Officer of Said
Corporations, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 158, Docket No. 25239.
 United States Court of Appeals Second Circuit.
 Submitted March 13, 1959.
Decided May 6, 1959.
 
 Martin C. Barell and Jack Verschleiser, of Goldstein, Golenbock & Barell, New York City, for petitioners.
 Earl W. Kintner, Gen. Counsel, James E. Corkey, Asst. Gen. Counsel, and Frederick H. Mayer, Atty., Federal Trade Commission, Washington, D.C., for respondent.
 Before WASHINGTON,* WATERMAN and MOORE, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 The issue in the present case is whether the label appended to the sweaters sold by the petitioners is a violation of Section 5(a)(1) of the Federal Trade Commission Act,[1] which declares unlawful 'Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce * * *.'[2]
 
 
 2
 The sweaters in question contained a blend of fibers consisting of 30% Angora rabbit and 70% lambs wool. Although containing no cashmere, this blend had many of the desirable characteristics of cashmere. Petitioners' products sold for about one-third the price of cashmere sweaters. The label used displayed the word 'Cashmora' in large script-like letters. Below in smaller letters were the words 'By Elliot.' On the bottom of the label in much smaller letters were the Wool Products Labeling Act registration number and the designation of the fiber content: '30% Angora-- 70% Lambs Wool.'
 
 
 3
 The Federal Trade Commission found (1) that the sweaters contained no cashmere-- a fact admitted by petitioner, (2) that the use of the name 'Cashmora' served as a representation that the product so labeled contained cashmere, and (3) that, as used, the name 'Cashmora' was false, misleading, and deceptive in violation of Section 5(a)(1) of the Federal Trade Commission Act. The Commission ordered the petitioners to cease and desist from using the word 'Cashmora' on all wool sweater products not made or comprised of a substantial amount of cashmere. The label was allowed to be used, however, if the sweater did contain a substantial amount of cashmere, and if the label designated the actual percentage by weight of cashmere therein.
 
 
 4
 Under Section 5(c) of the Act 'The Findings of the Commission as to the facts * * * shall be conclusive,' but only 'if supported by evidence.' Petitioners urge that there is no substantial evidence on the whole record to support the Commission's findings. The only testimony adduced was that of the petitioners' witnesses. The Commission submitted only the label into evidence, claiming that the name 'Cashmora' was deceptive per se.
 
 
 5
 Under ordinary circumstances, the word 'Cashmora' without more more might well be considered deceptive per se. Cf. C. Howard Hunt Pen Co. v. Federal Trade Commission, 3 Cir., 1952, 197 F.2d 273, 280; Perloff v. Federal Trade Commission, 3 Cir., 1945, 150 F.2d 757, 758; Country Tweeds, Inc., 1953, 50 F.T.C. 470, 473. But this hardly can be said of the label in the present case when it is considered in its entirety. A label reading 'Cashmora-- 30% Angora-- 70% Lambs Wool' is very different from one which does not contain a content specification. Both the courts and the Commission have indicated the specifying content does much to remove a label's possibilities of deception.
 
 
 6
 In Jacob Siegel Co. v. Federal Trade Commission, 1946, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888, a fabric coat, labeled 'Alpacuna,' contained approximately 50% alpaca, 20% mohair, and 30% wool, but no vicuna. The Federal Trade Commission had ordered the label to be completely excised. 36 F.T.C. 563 (1943). The Third Circuit affirmed. 150 F.2d 751 (1944). The Supreme Court reversed, and remanded the case for the Commission to consider whether another remedy could be employed in order that the trade name be saved. Upon remand the Commission held that 'nothing * * * shall prohibit use of the word Alpacuna to refer to respondent's garments if in immediate connection and conjunction therewith, wherever used, there appear words clearly and conspicuously designating all the constituent materials of fibers therein contained.' 43 F.T.C. 256, 259-260 (1946).[3]
 
 
 7
 If the specifying of the fiber content was sufficient to cure the deception in Jacob Siegel, it must follow that a similar specification of the fiber content in the present case precludes the Commission from holding the label here used deceptive per se. Let us compare the two words: Alpacuna and Cashmora. Each of the names suggests a truth: Alpacuna contains alpaca, and Cashmora contains angora. Each also suggests a falsity: Alpacuna does not contain vicuna, nor does Cashmora contain cashmere. But, in view of the specification of the actual contents of the product, a finding that the label as a whole is deceptive must be based on substantial evidence. Such evidence may perhaps be obtainable, but it does not appear in the present record. The order must accordingly be vacated, and the case remanded to the Commission.[4]
 
 
 8
 We are constrained also to comment on the form of remedy chosen by the Commission in this case, namely, the virtual excision of the trade name. In Federal Trade Commission v. Royal Milling Co., 1933, 288 U.S. 212, 217, 53 S.Ct. 335, 337, 77 L.Ed. 706, the Supreme Court held that the complete excision of a trade name
 
 
 9
 'should not be ordered if less drastic means will accomplish the same result. The orders should go no further than is reasonably necessary to correct the evil and preserve the rights of competitors and public; and this can be done * * * by requiring proper qualifying words to be used in immediate connection with the names.'
 
 
 10
 This principle was reaffirmed in the Jacob Siegel case, supra, at page 612, of 327 U.S., at page 760 of 66 S.Ct.
 
 
 11
 Complete excision may no doubt be ordered in cases in which a qualifying clause on the label would not clarify, but would only confuse the public and create a complete contradiction in terms. Thus, in Federal Trade Commission v. Algoma Lumber Co., 1934, 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655, the product was yellow pine, but the label was 'California white pine.' The Commission ordered, and the Supreme Court affirmed, the complete excision of the word 'White,' because presumably a qualifying phrase such as 'not made of white pine' would have been completely contradictory. Similarly in Federal Trade Commission v. Army & Navy Trading Co., 1937, 66 App.D.C. 394, 88 F.2d 776, 780, few of the goods sold in the store were army and navy goods. The court held that the qualifying phrase 'we do not deal in army and navy goods' would have been contradictory and would have tended to confuse. Therefore it affirmed the Commission order of complete excision, with certain minor exceptions.[5]
 
 
 12
 Where, however, qualifying phrases do not lead to a contradiction of terms, they have been allowed, and complete excision of the name has not been ordered. See Jacob Siegel Co. v. Federal Trade Commission, supra ('Alpacuna'; coats contained no vicuna; qualification: specifying fiber content).[6] The Commission maintains that 'Cashmora' cannot be cured by qualification, since any qualification would be a flat contradiction in terms. But Jacob Siegel (Alpacuna) and Country Tweeds (Kashmoor) were similar cases in which the Commission held that qualifications would cure deception.[7] Nor can the Commission fairly maintain the Elliot did not have a vested interest in the label of sufficient value to be considered in balancing the interests of the company vis-a-vis the public. The business interest was at least as strong as in Country Tweeds, Inc. (the 'Kashmoor' coat case). Under the circumstances, and on the present record, there seems no sufficient basis for applying the contradiction doctrine to Cashmora, as the addition to the label of the phrase 'contains no cashmere' might well be a permissible and sufficient remedy, if the Commission finds that the label as presently composed is in fact deceptive.
 
 
 13
 Section 5(c) of the Act gives this court power 'to make and enter * * * a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed * * *.' See also Section 5(d). 'Courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist.' Jacob Siegel v. Federal Trade Commission, 327 U.S. at page 613, 66 S.Ct. at page 760. The question is 'whether the Commission made an allowable judgment in its choice of the remedy,' and more specifically 'whether the Commission abused its discretion in concluding that no change 'short of * * * excision' of the trade name would give adequate protection.' Id., 327 U.S. at page 612, 66 S.Ct. at page 760.
 
 
 14
 On the present record, we think the Commission abused its discretion in choosing a remedy. But, inasmuch as the case is to be remanded on the merits, and further evidence adduced may have a bearing on the choice of remedy, we make no final holding on either issue.
 
 
 15
 The case will be remanded for further proceedings not inconsistent with this opinion.
 
 
 16
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 294(a)
 
 
 [1]
 38 Stat. 719 (1914), as amended, 15 U.S.C.A. 45(a)(1)
 
 
 [2]
 The complaint in this case is also brought under the Wool Products Labeling Act of 1939, 3, 4, 54 Stat. 1129 (1940), 15 U.S.C.A. 68a, 68b, and the Commission rules thereunder, Since the Commission decided that the petitioner violated the Federal Trade Commission Act, it did not reach the question of whether there is any difference in the discretion of the Commission in choosing the appropriate remedy to correct deceptive practices under the two acts. See FTC opinion in 1957-58 Trade Reg.Rep. para. 27,199, at 36,603 (Apr. 25, 1958)
 
 
 [3]
 Even prior to the remand of the case, the Supreme Court observed that Petitioner now uses labels reading 'Alpacuna Coat-contains no vicuna' and specifies the fibre content of the cloth. * * *' 327 U.S. at page 613 note 4, 66 S.Ct. at page 760
 
 
 [4]
 Our decision in E. F. Drew & Co. v. Federal Trade Commission, 2 Cir., 1956, 235 F.2d 735, 737, certiorari denied 1957, 352 U.S. 969, 77 S.Ct. 360, 1 L.Ed.2d 323, relied upon by the Commission, is not to the contrary of what we have just said. There, of course, oleomargarine was the product. The seller did his best to create a public impression that his oleomargarine was butter. Here, the seller is no doubt doing his best to persuade the public that his product could be cashmere, or at least is like it. The difference is quite clear, however. Drew advertised in ordinary English that his product was 'churned to delicate, sweet creamy goodness,' that it was 'country-fresh,' and that it had ' the same day-to-day freshness which characterizes our other dairy products.' The thrust of the Commission proceeding there, at least as we interpreted it, was directed to the misleading advertising in words of common English connotation. And the advertising was of the sort banned by a special act of Congress. Here the seller has thought up a label name which does not misrepresent in ordinary English words anything about his product. If the label also contains a statement of what actually is in the product, it will not necessarily mislead even 'that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.' Florence Manufacturing Co. v. J. C. Dowd & Co., 2 Cir., 1910, 178 F. 73, 75. See also Harsam Distributors, Inc. v. Federal Trade Commission, 2 Cir., 1959, 263 F.2d 396
 
 
 [5]
 See also Gold Tone Studios, Inc. v. Federal Trade Commission, 2 Cir., 1950, 183 F.2d 257 (gold tone process for finishing pictures not employed by studio); El Moro Cigar Co. v. Federal Trade Commission, 4 Cir., 1939, 107 F.2d 429 ('Havana Counts' name for cigars excised because cigars made entirely of domestic tobacco); Marietta Manufacturing Co. v. Federal Trade Commission, 7 Cir., 1931, 50 F.2d 641 (name 'Sani-Onyx, a Vitreous Marble' excised because product neither marble nor onyx); Masland Duraleather Co. v. Federal Trade Commission, 3 Cir., 1920, 34 F.2d 733 ('Duraleather' excised because product not made of real leather)
 
 
 [6]
 See also Federal Trade Commission v. Royal Milling Co., supra ('Milling Co.,' 'Mill'; companies did not grind flour; qualifications: 'not a grinder of grain.'); Bear Mill Manufacturing Co. v. Federal Trade Commission, 2 Cir., 1938, 98 F.2d 67, 69 ('Mill,' 'Manufacturing'; company did not manufacture; qualification: 'Converters, Not Manufacturers of Textiles'); N. Fluegelman & Co. v. Federal Trade Commission, 2 Cir., 1930, 37 F.2d 59, 60, ('Satimaid,' 'Satinized'; product had satin weave, but had cotton, not silk, content; qualification: 'A Cotton Fabric,' 'no silk,' etc.); Country Tweeds, Inc., supra ('Kashmoor'; coats contained no cashmere; qualification: 'contains no cashmere'). See also Federal Trade Commission v. Good-Grape Co., 6 Cir., 1930, 45 F.2d 70; Federal Trade Commission v. Cassoff, 2 Cir., 1930, 38 F.2d 790. Contra, Cohen Brothers Corp., 27 F.T.C. 923 (1938) ('Kashmoor'; Knitted dresses containing no cashmere; complete excision)
 
 
 [7]
 As the Commission explained in Country Tweeds, Inc., supra at 474:
 'If the trade name were 'Cashmere-- itself, the absolute excision would appear to be inescapable. A complete contradiction of terms such as 'Cashmere-- contains no cashmere' would not clarify the meaning, but would only tend to confuse. However, this is not true of the phrase 'Kashmoor-- contains no cashmere.' While the trade name Kashmoor is a simulation of cashmere and while its use falsely implies a cashmere content in the garments so labeled, it is subject to clarification. An explanation that the garment so labeled is designed to imitate cashmere in appearance and softness, but does not contain any cashmere fibers, is not a flat contradiction of terms, but is a reasonable explanation which would remove the capacity and tendency toward deception inherent in the trade name Kashmoor used alone.'