UNITED STATES of America

v.

VULCANIZED RUBBER AND PLASTICS COMPANY, a corporation.

Civ. A. No. 26184.

United States District Court
E. D. Pennsylvania.

Dec. 2, 1959.

Joseph L. McGlynn, Jr., U. S. Atty., Richard Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa., Frank M. Whiting, Attorney, Federal Trade Commission, Washington, D. C., for plaintiff.

W. Wilson White, White & Williams, Philadelphia, Pa., Donald E. Van Koughnet, Weaver & Van Koughnet, Washington, D. C., for defendant.

EGAN, District Judge.

This matter was certified to the Attorney General by the Federal Trade Commission pursuant to Section 16 of the Federal Trade Commission Act as amended (15 U.S.C.A. § 56) for the purpose of recovering civil penalties as provided in Section 5(*l*) of the said Act as amended (15 U.S.C.A. § 45(*l*), Supp. V, 1952), in the amount of $30,000 from the defendant, Vulcanized Rubber and Plastics Company, a Maine corporation, whose general offices and factory are located at Morrisville, Bucks County, Pennsylvania.

The penalties are claimed to be due because it is alleged that defendant, a manufacturer of combs for use in human hair, violated a cease and desist order issued by the Commission. Six separate violations are charged for which a penalty of $5,000 each has been imposed by the Commission.

Under Title 28 U.S.C. § 1345, the several District Courts of the United States are vested with original jurisdiction of all civil action suits or proceedings commenced by the United States, including suits for the recovery or enforcement of any fine, penalty or forfeiture incurred under any Act of Congress; and under 28 U.S.C. § 1395(a), which provides that any civil proceeding for the recovery of pecuniary fines, penalties and forfeitures may be prosecuted in the district where a defendant is found.

The Commission's complaint in 1954 was directed against the labeling of defendant's combs as "rubber" and "hard rubber".

The Commission's order issued in 1957 after extensive hearings [1] and was to the effect that defendant "cease and desist from representing * * * that (defendant's) combs are 'rubber' or 'hard rubber' or are made of 'rubber' or 'hard rubber' unless such combs are in fact made of vulcanized hard rubber."

Pursuant to the order of the Commission, the defendant terminated any branding or advertising of its product as "rubber" or "hard rubber." Thereafter it labeled the combs "rubber-resin" and so advised the Commission in a compliance affidavit.

About six months after the Commission's order issued, the Commission wrote to defendant construing its order to mean that the use of the legend "rubber-resin" was also prohibited within the meaning of its order, even though the materials of which the combs were then made were rubber and resin.

A timely petition for review of this construction by the Commission was filed by defendant in the United States Court of Appeals for the District of Columbia Circuit. The Court of Appeals, noting that "this interpretation may be changed or it may never be enforced," held that "there is no controversy calling for judicial review of the interpretation at the present time." Accordingly, the petition for review was dismissed. No petition for certiorari was filed.

Thereafter the dispute between the parties persisted. The Commission continued to insist upon its disapproval of the use of the legend "rubber-resin" and defendant continued to contend for its right to use it.

The Commission issued no new complaint and held no further or additional hearings but commenced this suit to recover penalties.

Defendant filed an answer wherein it admitted all the material allegations of fact charged in the complaint. Both sides moved for summary judgment.

The precise issue before the Court is whether the use of the legend "rubber-resin," which defendant is now using upon the combs of its manufacture, is prohibited by an order directing it to cease representing that its combs are "rubber" or "hard rubber" or are made of rubber or hard rubber manufactured by the

---

[1]. The lengthy record consists of 3,720 pages with approximately 200 exhibits, both documentary and physical. A total of 19 expert witnesses were called, 11 by the Commission and 8 by the defendant.

vulcanized hard rubber process. To a large extent, the answer depends on whether this is a new issue not heretofore litigated.

For many years defendant has been engaged in the manufacture of combs for use in human hair. Until 1950 it made all such combs by the sulphur vulcanized method. Under this process rubber and sulphur are vulcanized under heat, the result of the process being a distinct and definite product known in the industry as "hard rubber." Oliver-Sherwood Co. v. Patterson-Ballagh Corp., 9 Cir., 1938, 95 F.2d 70, 77.

Late in 1950 defendant commenced making the combs from a patented product manufactured by the United States Rubber Company under patents owned by it and sold by it under its trade name "Kralastic." The patented product is made up of 13% rubber, 85% resin and 2% coloring and other ingredients.

Defendant indicates that the issue litigated before the Commission concerns itself with combs made by the sulphur vulcanized method and not to the new method which defendant adopted in late 1950; that therefore there was no adjudication and that the defendant is not in violation of the Commission's order.

It is difficult to see how the defendant can maintain this position in view of the following finding of the Hearing Examiner which was adopted by the Commission:

"The gist of this proceeding is whether or not the representations of respondent in its advertising and labeling or branding of combs that are made of Kralastic D as 'Hard Rubber' or 'Rubber' are false, misleading and deceptive. It is found that they are false, misleading and deceptive as these combs are not made or composed of rubber or hard rubber but are made or composed in large part of materials other than rubber or hard rubber and do not contain any sulphur and are not made by the vulcanization process

but are admittedly made by the injection mold or extrusion process."

The newer method used by defendant is faster and cheaper.

The defendant stated, for a first defense, in its answer filed with the Commission:

"10. The respondent's combs are made or composed of a synthetic rubber which is as equally embraced within the meaning of the terms 'rubber' and 'hard rubber' as 'tree rubber.' The synthetic rubber used in respondent's combs possesses qualities and properties which render it as equally suited for use in combs as 'tree rubber': * * *."

Defendant also stated, for its second defense, in part, as follows:

"12. The purchasing public understands the terms 'rubber' and 'hard rubber' to include synthetic rubber as well as 'tree rubber' and the public is not misled by the use of such terms to describe combs made of synthetic rubber. The purchasing public does not distinguish between or prefer 'hard rubber' combs made of 'tree rubber' to 'hard rubber' combs made of synthetic rubber. * * *"

At the hearings before the Hearing Examiner, defendant conceded that it was not using vulcanized rubber in the manufacture of its combs. Rather it contended that the terms "rubber" and "hard rubber," when applied to combs, had acquired a secondary meaning broad enough to include plastics and containing a minuscule portion of synthetic rubber even though vulcanization had no part in its manufacture.

On a full and complete record, the Hearing Examiner, as well as the Commission, rejected defendant's novel defense. We think properly so.

After the defendant lost its case before the Commission, it started to brand its combs "rubber-resin" and indicated that they were made of "rubber-resin." De-

fendant now takes the position that its combs marked "rubber-resin" are, in fact, made of such substances and that there is no misrepresentation or intention to represent to the purchasers thereof that the same are, in fact, made of "rubber" or "hard rubber;" that the issuance of such a cease and desist order is a condition precedent to an action for the civil penalty provided for in the Federal Trade Commission Act; that this requires a proceeding *de novo* and that this action is fatally defective by reason thereof.

■ If this were a simple problem in semantics, there might be some merit to defendant's contention. But it is not. It is a substantive controversy as to trade terms which have gained a special meaning by their use and acceptance in the comb making industry over a period of years. By the device of giving them a secondary meaning, which was rejected by the Commission on appropriate evidence, defendant would have us frustrate the Commission's order which defendant says is not broad enough to bar its present maneuver. With this we cannot agree.

No question has been raised as to the application of the maximum penalty to each breach of the Commission's order and we do not discuss it.

■ Defendant insinuates that the Commission has been guilty of laches and is estopped from proceeding because it was informed in February 1951 by one of the Commission's staff that the Commission would not issue a complaint against it because of the use of the new process. These defenses are not available to the defendant and the Commission properly so found. The equitable defenses of estoppel and laches do not apply against the Government in a suit by it in the public interest. Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 80, 54 S.Ct. 315, 78 L.Ed. 655; Federal Trade Commission v. Bunte Bros. Inc., 312 U.S. 349, 352, 61 S.Ct. 580, 85 L.Ed. 881; Utah Power & Light Co. v. United States, 243 U.S. 389, 409,

37 S.Ct. 387, 61 L.Ed. 791. The same rule applies to the hearings of a public agency when it is acting in its administrative or judicial capacity. Wallace Corp. v. N.L.R.B., 323 U.S. 248, 253, 65 S.Ct. 238, 89 L.Ed. 1435; P. Lorillard Co. v. F.T.C., 4 Cir., 186 F.2d 52, 55–56.

In the case before us, we find that the Commission's order does not go beyond the bounds of the complaint and that its interpretation of its order is a proper one. See Masland Duraleather Co., v. F.T.C., 3 Cir., 1929, 34 F.2d 733, 736; Arrow Metal Products Corporation v. F.T.C., 3 Cir., 1957, 249 F.2d 83; Jacob Siegel v. F.T.C., 3 Cir., 1944, 150 F.2d 751; Marietta Mfg. Co. v. F.T.C., 7 Cir., 1931, 50 F.2d 641.

We have examined Milk and Ice Cream Can Institute v. F.T.C., 7 Cir., 1946, 152 F.2d 478 and Arrow Metal Products Corporation v. F.T.C., supra, on which defendant so heavily relies and find them inapplicable. The former was a proceeding against an unincorporated trade association, the members of which manufactured practically all of the milk and ice cream cans sold and distributed in the United States. The cans were shipped f. o. b. their various plants and an adjustment was made in freight rates so that the delivered price was the same to all purchasers regardless of who sold and the distance shipped. It did not involve the use of trade names or the names of manufactured products. The latter case really supports the position of the plaintiff. There the Commission found that the use of the term "porcenamel" to describe appellant's awning products carried with it a representation that the awning products were coated with porcelain enamel, when they were actually coated with an organic plastic resin. The Commission entered a cease and desist order and approved the Hearing Examiner's findings. As indicated, this was approved by the District Court and by our Court of Appeals.

Summary judgment will be entered for the plaintiff. Counsel will submit an appropriate order.