34 F.3d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROADWAY EXPRESS, INC., Petitioner,
v.
Robert B. REICH, Secretary of Labor, Respondent.
 No. 93-3787.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner Roadway Express, Inc., seeks review of respondent Secretary of Labor Robert Reich's affirmance of an administrative law judge's finding that Roadway discriminated against Robert Spearman in violation of the Surface Transportation Assistance Act's "whistleblower" provision, 49 U.S.C. app. Sec. 2305(b). Roadway argues that Secretary Reich's predecessor, Lynn Martin, exceeded her statutory authority and denied Roadway its due process right to a fair hearing when she removed the ALJ originally assigned to Spearman's case. We disagree, and affirm.
 
 I.
 
 2
 Roadway is engaged in the trucking business and Spearman was a Roadway truck driver for more than 24 years. Spearman was scheduled to begin a drive from Nashville, Tennessee, to Valdosta, Georgia, at 5:00 a.m. on October 25, 1990. This trip is roughly 480 miles and usually takes nine to ten hours to complete. Since federal regulations limit truck drivers to ten hours of driving time without a rest period, see 49 C.F.R. Sec. 395.3, Spearman was scheduled to stay overnight in Valdosta and begin his return drive to Nashville on the morning of October 26.
 
 
 3
 Spearman's schedule was disrupted, however, when delays kept him from leaving Nashville until 11:50 a.m. on October 25. Although Spearman was within three hours of Valdosta by 7:30 p.m. that evening, he at that time called his dispatcher to inform him that he (Spearman) was "placing himself out of service" because he was fatigued.[1] He then checked into a motel and slept until about 5:30 a.m. the morning of October 26. Spearman was back on the road by 7:00 a.m., and arrived in Valdosta at 9:25 a.m. that morning. The Valdosta dispatcher promptly ordered that Spearman be "put to bed" so that Spearman could make the return trip to Nashville without running out of driving hours. Spearman consequently did not leave Valdosta until 6:45 p.m. that evening, and was two hours away from Nashville at 3:00 a.m. on October 27. By that time, however, Spearman was again too fatigued to continue driving, so he checked into a motel in Jasper, Tennessee. After sleeping for eight hours, Spearman resumed driving and arrived in Nashville at 1:00 p.m. on October 27. He then requested reimbursement for the amounts of his motel bills, but the Roadway dispatcher on duty denied his request.
 
 
 4
 Spearman thereafter filed a complaint with the United States Department of Labor (DOL). In his complaint, Spearman alleged that Roadway's failure to reimburse him for his motel bills violated 49 U.S.C. app. Sec. 2305(b), which prohibits "discriminat[ion] against an employee ... for refusing to operate a vehicle when such operation constitutes a violation of any Federal rules, regulations, [or] standards[.]" After an investigation, the DOL's Occupational Safety and Health Administration (OSHA) found on September 25, 1991, that Spearman's complaint was not supported by probable cause. Under 49 U.S.C. app. Sec. 2305(c)(2)(A), Spearman had 30 days from the date of his receipt of this finding to file objections to it. Spearman twice moved for and received extensions of the filing period, and finally filed his objections on January 23, 1992.
 
 
 5
 Spearman's case was assigned to Administrative Law Judge Gilday for de novo review, and was scheduled to be heard on March 4, 1992. On February 17, 1992, Spearman's attorney moved for a continuance because, she said, she had only recently been retained and had not been able to discuss Spearman's case with him until that day. The ALJ granted this motion, but noted that Spearman's previous submissions to him appeared to have been prepared with the assistance of a lawyer. Suspecting that the continuance motion may have misrepresented the extent to which Spearman already had been assisted by counsel, the ALJ stated that, during the rescheduled hearing, "Complainant, under oath and on the record, shall be required to show cause why he has neither abused nor misused the administrative process[.]" (App. at 199.)
 
 
 6
 Meanwhile, pursuant to the ALJ's direction, Spearman and Roadway each presented a "pre-hearing statement" that presented their arguments and listed the witnesses they would call during the hearing. Roadway interpreted Spearman's statement to set forth seven claims that had not been set forth in Spearman's original complaint. Roadway moved to strike these additional claims on March 18, 1992. Chapter 29 C.F.R. Secs. 18.4(c)(3) and 18.6(b) provide that, if a motion is served upon a party by mail, that party "may file" an answer in opposition to the motion within 15 days of service. A copy of Roadway's motion was sent to Spearman by mail. On March 31, 1992, two days before the end of the 15-day response period and before any answer had been received from Spearman, the ALJ granted Roadway's motion to strike.
 
 
 7
 The following day, Spearman moved to set aside the order granting Roadway's motion to strike. On April 2, 1992, the ALJ denied Spearman's motion, noting that Spearman had been given twelve days to respond to Roadway's motion. The ALJ also suggested that Spearman's counsel would be wise to use her time to "prepare Complainant for his announced, on-record demonstration that he has not abused or misused the administrative process and that he should not be the subject of a proceeding in contempt initiated in the United States District Court for the Southern District of Ohio." (App. at 245.) Later that day, Spearman nevertheless submitted his memorandum in opposition to Roadway's already-granted motion to strike. In this memorandum, which the ALJ apparently ignored, Spearman argued that the additional "claims" were merely issues that were relevant to the claim set forth in his original complaint, and pointed out that these issues had been raised in an OSHA questionnaire that Spearman filled out after filing his complaint.
 
 
 8
 On April 10, 1992, Roadway filed a motion in limine to exclude from the hearing evidence pertaining to the seven stricken claims. The parties agreed that this motion was largely repetitive of Roadway's motion to strike. The ALJ granted in part the motion in limine on April 20, 1992, before Spearman had filed a response. Spearman filed his response later that same day, but the ALJ apparently paid no heed to it.
 
 
 9
 Picking up on a suggestion in Roadway's pre-hearing statement, the ALJ entered an order on April 23, 1992, directing the parties to show cause why Spearman's case should not be dismissed because of his failure to file objections to OSHA's findings within the 30-day period set forth in 49 U.S.C. app. Sec. 2305(c)(2)(A). After both parties briefed the issue, the ALJ concluded that the Sec. 2305(c)(2)(A) limitations period was jurisdictional in nature and that the filing period extensions which were granted to Spearman were void as a result. Having thus determined that Spearman's filing was untimely, the ALJ recommended to the Secretary that Spearman's case be dismissed in its entirety. Spearman filed motions to set aside this recommendation and to recuse ALJ Gilday from Spearman's case. These motions were denied.
 
 
 10
 The ALJ's recommendation was then forwarded to former Secretary of Labor Lynn Martin for a final decision. Secretary Martin rejected the recommendation of dismissal and vacated the ALJ's March 31 order (granting in part Roadway's motion to strike), portions of the ALJ's April 20 order (granting Roadway's motion in limine), and the ALJ's order that Spearman show cause why he had not abused the administrative process. Secretary Martin ruled that these orders "plainly [were] in error" (app. at 57), and "f[ou]nd particularly disturbing that the ALJ repeatedly ruled on Respondent's motions without awaiting expiration of the period permitted under the regulations for Complainant's response, thus denying him an opportunity to be heard." (App. at 56.) Secretary Martin further concluded that ALJ Gilday's "handling" of Spearman's case had been "inadequate," although she expressly refused to find that ALJ Gilday was in any way biased in Roadway's favor. (App. at 362.) Because of ALJ Gilday's inadequacy, Secretary Martin ordered that Spearman's case be assigned to an ALJ other than Gilday after remand.
 
 
 11
 Spearman's case thereafter was assigned to ALJ Lawrence, who conducted a hearing. After considering conflicting testimony on the issue, ALJ Lawrence found that Roadway had a policy of reimbursing the lodging expenses of drivers who make unscheduled stops because of fatigue. Lawrence thus concluded that the denial of reimbursement to Spearman constituted discrimination in violation of 49 U.S.C. app. Sec. 2305(b). ALJ Lawrence issued a recommended decision and order consistent with this finding. Secretary Martin's successor, Robert Reich, reviewed this recommendation and adopted it. This appeal followed.
 
 II.
 
 12
 Roadway argues that Secretary Martin violated 5 U.S.C. Sec. 3105 when she ordered ALJ Gilday removed from Spearman's case. That section provides in relevant part: "Administrative law judges shall be assigned to cases in rotation so far as practicable[.]" Courts have interpreted this "so far as practicable" language to afford agencies a "modicum of discretion," Tractor Training Serv. v. Federal Trade Comm'n, 227 F.2d 420, 423 (9th Cir.1955), cert. denied, 350 U.S. 1005 (1956), to depart from the ALJ rotation order. The cases reveal that this discretion is validly exercised when the departure is made to further the interests of administrative efficiency. In Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 139-40 (1953), the Supreme Court held that the phrase "so far as practicable" allowed agencies to consider whether an ALJ (then called a "hearing examiner") was "qualified to handle" a particular case. In Tractor Training, the Ninth Circuit relied on Ramspeck when it held that "the interests of economy" supported the FTC's decision to reassign a case from an East Coast hearing examiner to an examiner in Oregon because, it seems, the majority of the witnesses resided in the Portland, Oregon, area. In National Nutritional Foods Association v. Food & Drug Administration, 504 F.2d 761 (2d Cir.1974), the FDA had ensured that a particular case was assigned to a newly-hired examiner because its only other examiner was "otherwise engaged." The Second Circuit found no Sec. 3105 violation. Finally, in Aaacon Auto Transport, Inc. v. Interstate Commerce Comm'n, 792 F.2d 1156, 1163 (D.C.Cir.1986), cert. denied, 481 U.S. 1048 (1987), the ICC had, as here, directed a change of ALJs on remand, because of the original ALJ's "proven inability to cut through Aaacon's dilatory tactics and move the proceedings along[.]" The District of Columbia Circuit held that the ICC's decision to remove the ALJ "plainly falls within the 'modicum of discretion' which Ramspeck accords ICC in its assignment of ALJs." Id.[2]
 
 
 13
 Viewed in light of these cases, Secretary Martin's decision to remove ALJ Gilday from Spearman's case fell within the discretion afforded her by Sec. 3105. Although Secretary Martin sharply criticized the orders she vacated, the impetus for her removal of ALJ Gilday apparently was that she was "particularly disturb[ed]" by his repeated refusal to await the expiration of the usual response period before issuing rulings on Roadway's motions. (App. at 56.) Thus, Secretary Martin removed ALJ Gilday not because she simply disagreed with his rulings, but because, like the ALJ in Aaacon, ALJ Gilday had failed to conduct the proceedings in an appropriate manner. In Aaacon, the ALJ's handing of the case was too dilatory; here it was too hasty. We do not perceive any distinction of consequence between those two grounds of removal. We therefore reject Roadway's statutory argument.[3]
 
 
 14
 Roadway further argues that the removal of ALJ Gilday from Spearman's case denied Roadway its due process right to a fair hearing. In Roadway's view, Secretary Martin's removal of ALJ Gilday, coupled with her criticism of ALJ Gilday's rulings in favor of Roadway, sent a "strong message" to ALJ Lawrence about the ultimate result that she thought should be reached in Spearman's case.
 
 
 15
 We have recognized that "the due process requirement of a fair trial in a fair tribunal 'applies to administrative agencies which adjudicate as well as to courts.' " Utica Packing Co. v. Block, 781 F.2d 71, 77 (6th Cir.1986) (quoting Withrow v. Larkin, 421 U.S. 35, 46 (1975)). We accordingly have stated that the due process rights of an administrative litigant are violated when "the risk of unfairness" to that litigant is "intolerably high." Id. at 78. Although the protesting litigant bears the burden of proving the existence of such a risk, id., the litigant need not prove "actual partiality" to carry this burden. Id. at 77.
 
 
 16
 In Utica Packing, plaintiff Utica proved that its due process rights had been violated. There, the United States Department of Agriculture had filed a complaint with the Secretary of Agriculture, seeking the cancellation of a meat inspection contract between the USDA and Utica. The ALJ assigned to the case recommended a decision in favor of the USDA. Utica appealed to a USDA "judicial officer," Donald Campbell, whose role was more or less identical to that of the Secretary here. Campbell affirmed, and Utica sought review of his decision in this court. We reversed, and remanded the case for further consideration by Campbell, who in turn reversed the ALJ and entered a decision in favor of Utica. Although the USDA "violently disagreed" with this decision, id. at 78, its only recourse at that point was to file a motion for reconsideration with Campbell. Before the USDA filed such a motion, however, the Secretary of Agriculture removed Campbell from the case and replaced him with a Deputy Assistant Secretary of Agriculture, John Franke, Jr. The USDA then filed its motion for reconsideration, which Franke granted. Utica sought review of Franke's decision in this court, arguing that the replacement of Campbell with Franke violated its due process right to a fair tribunal. We agreed, noting that "[t]here is no guarantee of fairness when the one who appoints a judge has the power to remove the judge before the end of proceedings for rendering a decision which displeases the appointer." Id. at 78.
 
 
 17
 The facts here differ materially from those in Utica Packing. First, the DOL was not a party to the litigation at issue, and Roadway has failed to show that the DOL otherwise had some vested interest in the result reached by the ALJ. Thus, there is no basis for concluding that ALJ Gilday's decisions "displeased" Secretary Martin in the sense in which the Utica Packing court used that term.
 
 
 18
 Second, Secretary Martin's removal of ALJ Gilday and criticism of his rulings posed nowhere near the risk of unfairness that was posed by the replacement of Campbell with USDA's "hand-picked" successor. Secretary Martin's legal disagreements with ALJ Gilday were limited to technical, procedural issues that bore no direct relationship to the merits of Spearman's case. Those disagreements accordingly did not send any "strong message" about which way, if any, Secretary Martin wanted the case decided.
 
 
 19
 Roadway contends that there is "no doubt" that a strong message was received by ALJ Lawrence because he resolved a critical issue of credibility against Roadway by relying on highly equivocal testimony. The central issue during the hearing was whether Roadway has a policy of reimbursing drivers who stop for "subjective" reasons such as fatigue or illness. Roadway drivers Brandy Wyatt and Fred Brown each testified to the effect that they thought but were "not sure" that Roadway had such a policy. (App. at 393, 559.) Roadway relay manager Roger Morrison, on the other hand, flatly denied that Roadway had any such policy. Driver R.K. Stewart likewise stated that he had "thought and thought" but could not recall a single instance in which a driver had been reimbursed for expenses relating to a fatigue or illness stop. (App. at 541.) After hearing all of this testimony, ALJ Lawrence concluded that Roadway did in fact have a policy of reimbursing drivers who stop because of fatigue or illness. This conclusion, however, is not so extraordinary as to be proof that ALJ Lawrence had been cowed by Secretary Martin's earlier actions. A factfinder need not always make credibility determinations in favor of the more categorical witness. Moreover, as the Secretary points out, Roadway was unable to present any documentation in support of Morrison's assertion that Roadway did not reimburse drivers who stop for subjective reasons.[4] We conclude, then, that Roadway has not met its burden of proving that an "intolerably high" risk of unfairness existed in the hearing before ALJ Lawrence.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Chapter 49 C.F.R. Sec. 392.3 provides that a driver may not operate a vehicle while his "ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for [the driver] to begin or continue to operate the motor vehicle."
 
 
 [2]
 An ALJ also may be removed for bias under 5 U.S.C. Sec. 556(b). Secretary Martin expressly refused to conclude that ALJ Gilday was in any way biased, however, and neither party argues that ALJ Gilday was in fact biased. Section 556(b) therefore has no bearing on the issues presented in this case
 
 
 [3]
 As noted earlier, 29 C.F.R. Secs. 18.4(a)(3) and 18.6(b), when read together, provide that, if a motion is served upon a party by mail, that party "may file" a response to the motion within 15 days of service. Roadway points out, however, that 29 C.F.R. Sec. 18.6(a) provides that "all parties shall be given reasonable opportunity to state an objection to the motion or request." Roadway thus suggests that ALJ Gilday's refusal to wait for Spearman's responses to Roadway's motions was proper because, though the 15-day period had not yet expired at the time of his rulings, Spearman nevertheless had been given a "reasonable time" to respond. Hence, Roadway implies, Secretary Martin's criticism of ALJ Gilday on this point amounted to no more than another disagreement with him as to the correct interpretation of the applicable law. We disagree, because ALJ Gilday's rulings reveal no hint that his precipitous handling of the motions was in fact based upon his adherence to the ex post facto interpretation of Sec. 18.6 offered by Roadway. Rather, ALJ Gilday's extreme dispatch quite plainly was based on his sense that any response Spearman might file to these motions would not be worth considering. See app. at 245 (Order Denying Motion to Set Aside/Order Granting Motion to Strike) ("[A]ny response" that Spearman might file to Roadway's motion to strike "would border on the frivolous.")
 
 
 [4]
 Roadway asserts that it regarded this case as a "test case" of the legality of its alleged non-reimbursement policy, and laments that ALJ Lawrence's factual findings precluded a determination of that issue. If Roadway in fact seeks such a determination, it can easily formalize its reimbursement policy in writing, so as to make it far more difficult for an ALJ in a future proceeding to make the factual finding that ALJ Lawrence made here